KOERNER v. DEUTHER et al.

(Circuit Court, W. D. New York. February 7, 1906.)

No. 21.

1. PATENTS—INVENTION—PRINTERS' DRYING RACKS.

The Koerner patent, No. 392,735, for drying racks for lithographers and printers, while of narrow scope in view of the prior art, was not anticipated, and discloses patentable invention in its feature of so constructing the trays or racks that they slide upon and interlock with each other to form a stack, and facilitate handling and moving. Also *held* infringed.

2. SAME.

The Koerner patent, No. 504,985, for a drying rack for lithographic or printed sheets, which covers an improvement on the device of the prior patent No. 392,735, to the same patentee, is void for lack of invention.

In Equity. On final hearing.

Macomber & Ellis, for complainant.

Wetmore & Jenner (William A. Jenner and Oscar W. Jeffrey, of counsel), for defendants.

HAZEL, District Judge. This action was brought to restrain the conjoint use and infringement of two letters patent, No. 392,735, dated November 13, 1888, and No. 504,985, dated September 12, 1893. Both patents were issued to the complainant as inventor, and both relate to improvements in lithographers' and printers' drying racks. The object of the invention was to enable easy and convenient sliding and stacking of the racks or trays one upon the other, and to overcome certain difficulties in the drying instrumentalities of the prior art. The earlier patent will be considered first. The specification speaking of the prior art, says:

"These frames are usually stationary; but if not, are necessarily bulky, and therefore require considerable time and trouble in handling. The object of my invention is to overcome these and other troublesome features; and it consists of a rack or tray constructed in such a manner that a number of the same can be laid or slid one upon the other to form a stack having spaces between the racks for the accommodation of the printed sheets to be dried."

The single claim reads as follows:

"An interchangeable paper rack or tray for lithographers' or printers' use, consisting, essentially, of a floor piece or pieces having secured thereto on each side a rail, each rail having an inner wall, a shelf, or recess above the inner wall, a guard along the outside of the shelf or recess, and an outside groove below the guard adapted for sliding register with the guard of the rack placed beneath, all arranged in a series, as shown, to form a drying-stack for printed sheets, substantially as described."

The defenses are anticipation, want of patentable novelty, prior public use and sale for more than two years before filing application, and noninfringement. The defendants contend that the claim is limited to a rail or bar secured to each side of the floor pieces, such construction of the claim being precisely descriptive of various kinds of drying trays and racks found in the prior art. A literal inter-

pretation of the language of the claim indicates, perhaps, that the floor pieces were to be provided with four rails instead of two parallel side rails firmly secured to the edges of floor pieces. In this particular, the claim probably is not free from criticism. The word "sides," however, does not always include the marginal parts of a surface, for the Century Dictionary says:

"The word side may be used either of all the bounding surfaces of an object, as with certain prisms, crystals and geometrical figures, or as exclusive of parts that may be called top, bottom, edge, or end, etc."

According to this definition, the defendant's interpretation of the word sides is somewhat narrow and illiberal. It is a statutory rule that a patentee must define precisely what his invention is and his claims must be construed consonant with the plain import of the language employed. White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303. But it frequently happens that resort must be had to the specification for the purpose of finding out all that the claim actually means. Some times features may be included in the claim which are not therein specifically alluded to for the express purpose of showing that the patented device is not inoperative. McCarty v. Lehigh Valley R. R. Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358. And whenever a correct drawing of the specific device is attached to the specification, the claims should in all fairness be construed in connection therewith unless they are free from ambiguity or indefiniteness of expression. Robbins v. Aurora Watch Co. (C. C.) 43 Fed. 521. Reference to the specification and drawings in this case neither enlarges the scope of the claim nor does it describe a drying tray or rack different from that conceived by the patentee. On the contrary, the specification and drawings are helpful in ascertaining what the patentee meant by the use of the words "on each side of a rail." Unquestionably, he meant to be understood as claiming a drying tray or rack with two rails or bars on opposite sides secured to the edges of the floor pieces, and not on four sides thereof. Upon this point the specification says:

"Referring to the drawings it will be seen that each rack or tray consists of the floor-pieces, aa, with open spaces, a, between them, and the side rails or strips, bb, which are secured to the side edges of the floor-pieces, a, upon their top surfaces."

Any other construction of the claim would manifestly defeat the object of the patent. In explanation of the mode of operating the rack the specification says:

"In operation one of these trays or racks is placed upon the delivery table of the printing press, and the sheets, as printed, are automatically placed thereon by the fly of the press. When a sufficient number has accumulated, the tray is taken away to make room for the next, and is placed upon a truck, as at e, Fig. 1. Upon this tray is placed or slid another, as clearly shown in Figs. 1 and 2, and so on until a stack has accumulated, as shown in Fig. 1. The printed sheets are left as just described until dry."

The foregoing quotations read in connection with the claim indicate that the drying apparatus was specifically designed for the purpose of placing thereon printed or lithographed sheets by the fly of the press; that each rack has two rails or bars which are firmly

143 F.—35

affixed to opposite ends or to the side edges of the floor pieces, thereby enabling sliding one rack on top of another. This was the essence of the invention. To accomplish the object of the patent, the rails are provided "with a guide groove and guard adapted to co-operate with corresponding grooves and guards of other racks forming a stack." The fact that the specification shows in detail the necessity of parallel rails to carry out the purpose of the invention; i. e., the sliding of one rack upon another to produce an interlocking thereof, distinguishes this case from Roemer v. Neumann (C. C.) 26 Fed. 102, and Windle v. Parks & Woolson Mach. Co., 134 Fed. 381, 67 C. C. A. 363, cited by counsel for defendant as sustentative of the proposition that the claim is being enlarged beyond its scope. Racks for drying lithographic prints were concededly old, though the utility of the device in question is sufficiently established by the proofs. The trade, apparently, was quick to appreciate the interchangeable sliding feature of the patent. This is shown by a letter written to complainant by Mr. Donaldson, a lithographer, and afterward president of the American Lithographing Company (the real defendant, as claimed by complainant). The letter states that the invention in suit was an invaluable adjunct to the lithograph business and that by the use of the device the firm of Donaldson Bros., lithographers, were "enabled to dispense almost entirely with slip sheets to the great improvement of our work; while the loss by offset, fingermarks, dust, etc., has been reduced to a minimum." But it is contended that the prior art discloses the principle of interlocking the trays specifically set forth in the specification. It is true that some of the features of the patent in suit were old and familiar to the art, but in spite of the separate utilization of such elements in other kindred devices the combination in suit is thought to perform a new and useful function. The proofs show that matched surfaces, rabbet joint, grooves, etc., which were used by the patentee in the construction of the tray or rack, and the rails to interlock one tray on another were old. Such elements, however, were not hitherto combined in such a way as to produce a structure which was adapted to slide upon a similar structure to form a stack and to facilitate handling and removing from one place to another. Was it invention to do this? An examination of the patents and devices cited in anticipation shows that the claim of patentability stands on narrow ground. The Hildenbrand and Ottman racks concededly were adapted to receive the printed sheets from the flies of the press, and to stack one rack above another; but in each the significant feature of sliding the racks securely in their places one above another and interlocking them to prevent shifting or tilting was lacking. That such was the fact is supported by the testimony of the expert witnesses examined for the complainant, and by an inspection of the prior racks. The patent declares that in the prior devices the sheets coming from the press were placed in cumbersome frames and boxes to dry. This, evidently, in view of the Hildenbrand and Ottman racks, was not an accurate statement. The side rails in these devices were flat and the boards were nailed between an upper and

lower strip or rail, which were not provided with grooves nor the interlocking feature, certainly, they did not suggest the combination in suit, nor did they make obvious that which is claimed therein.

The patents of Ryder, No. 320,399, of McFarland, No. 210,362, of Strong, No. 361,379, and of Grier, No. 221,056, are relied on to anticipate the patent in suit. The Ryder patent is for a fruit dryer, and has side or end rails, or walls with ribs or grooves attached to floor pieces. The McFarland patent discloses a series of fruit drying trays with rails secured to floor pieces at their side and end; the rails having a guide groove and guard. In the Strong patent is shown trays for drying fruit, which also have a wall or rail on each side to facilitate stacking the trays one above another. The Grier patent described a rectangular frame with side rails and an interlocking arrangement. Although side rails, as stated, and the system of interlocking the trays one above another are shown in the above patents for fruit drying, the combination of the Koerner patent is essentially differentiated from them in that it produces a new result which enables continual sliding and stacking the trays and interlocking them without lifting one on top of the other. This is accomplished by constructing the rack so as to keep the ends free and open, the side bars being secured to the edges of the floor pieces. If the side rails or bars surrounded the tray the sliding feature manifestly would be impracticable. The Lutz jewelers' tray, upon which stress is laid by defendants, is also objectionable, on the ground that it has rails or rims on four sides of the floor pieces, and hence, was incapable of operating to produce the result of the patent in suit. The slight differences pointed out are important, and are shown by the evidence to have resulted in a more useful adaptation to the needs of the trade. This precise method of sliding the racks has not been disclosed by the prior art and the complainant was the first to adopt such form of the tray or rack for the purpose specified in the patent. The argument of nonpatentability is a plausible one, and why the slight alteration herein described did not occur to others engaged in the lithograph art is not explained. However simple the alteration, the fact is that no one perceived the advantages that would result by adapting the changed or altered form to the use designed by the patentee. That the complainant's apparatus is entitled to merit and a limited range of equivalents is shown by Mr. Donaldson's letter, to which attention has been directed, praising the efficiency of the racks. The Hildenbrand and Ottman devices were long and directly known to the lithographic art. The fruit drying racks and the Lutz tray closely approach the device in question. In short, the prior art possessed all the possibilities of the Koerner device, and yet lacking the sliding feature, no one seems to have thought of the advantages that were to be derived from a slight alteration in that which was known and in use. As said in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177:

"But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes;

they may also almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice."

The defendants contend that the patents relating to fruit dryers belong to the art, and in the examination which I have given the subject-matter, I have regarded them as analogous. I am constrained, however, to hold that in principle the first-known patent is materially different from the prior art. The alteration in the frame or rail embodied a substantially different method of operation to produce a new result. As to prior public use. Evidence was given by the defendants to prove that prior to the year 1899, they had manufactured and sold racks containing all the elements of the complainant's rack; such structures being used for drying lithographs after painting or varnishing them. Several witnesses, former employés of the defendants, testified positively that racks were manufactured by the defendants about twenty years ago, and models and sketches were produced on the trial from memory by the witnesses Deuther and Dykstra. No racks or models actually manufactured by defendants were produced; it being explained that a fire had destroyed them. It does not appear that Mr. Deuther ever applied for a patent, and no witnesses were called to controvert the claim of prior public use. In the absence of a rack manufactured and used as claimed by the defendants I am not inclined to find as a fact that the patented structure has been in prior public use. Upon this proposition the burden of proof under the rule is on the defendants, and every reasonable doubt should be resolved against them. Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821. In Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153, the Supreme Court says:

"Granting the witnesses to be of the highest character, and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used."

That the defendants have infringed the Koerner patent in question in view of the scope of the claims as herein indicated is not seriously controverted. The defendants' rack which infringes is provided at the opposite ends of the floor pieces with bars or rails grooved on one side, together with a guard on its opposite side. The groove and guard are arranged so as to enable forming a stack by sliding the racks one on top of the other. In addition to such features, the rails or bars have channels or recesses which serve to retain the slatted floor pieces. Other structural differences relate to the details; in fact, the said rack in form is similar to the complainant's latter adoption. To differentiate their structure the defendants have inverted the essential elements of the rack of the complainant; but by such reversal they have retained the principle which, I think, removes the patent from the domain of the prior art. By equivalent means the defendants have attained the same result, and hence, they cannot escape the charge of infringement. Patent No. 504,985, re-

lating to the same subject as the first, is claimed to be an improvement. Much of what has been said of the first patent could appropriately be said of the latter. The specification states that the object of the patentee was to provide a rail of increased rigidity and strength. The claim allowed by the Patent Office reads:

"An interchangeable rack or tray for lithographers' or printers' use, consisting essentially of a floor piece or pieces, having secured thereto on each side a rail, each rail having an inner wall, a shelf or rest above the inner wall, an outside groove adjacent to the shelf and opposite to the inner wall, a depending guard underneath the outside groove and projecting below the floor pieces adapted for sliding register with the outside groove of the rack placed beneath, and a recess above the depending guard forming a shelf for the reception of the end of the floor piece, all arranged in a series as shown to form a drying stack for printed sheets, substantially as described."

Upon examining the record, it will be observed that the floor pieces are inserted in a groove in the side rail or bars instead of being nailed to the underside thereof; the side walls being inverted. The application was several times rejected by the Patent Office on the grounds that the device consisted in "nothing more than a slatted tray having a ledge on the upper side and retaining flange on the lower side," and that it "consists in merely reversing the end rails and attaching the transverse strip to a different part of the same." Later, however, the application was allowed. Regarding the patentability of the second patent, Mr. Kimball, expert witness for the defendant, says:

"The tray shown, and very minutely described in this patent, is comprised of the same parts as the tray of the former patent, these being simply floor pieces with two matching side rails; the latter being mortised to the edges of the flooring. The disposition of the matching or interlocking elements is one in which the upper rib or guard is on the inside, and the lower rib on the outside; that is to say, the relative positions of rib and groove with respect to the floor are reversed from the positions of these parts in the first Koerner patent."

There is no novelty in channeling or recessing the rails and joining the floor pieces thereto. Peters v. Hanson, 129 U. S. 541, 9 Sup. Ct. 393, 32 L. Ed. 742. The inversion of the bars or rails together with such other alterations as are proven, was simply the application of old elements without creating any new result, and, therefore, the second Koerner patent does not involve invention. Moreover, the principle of sliding one rack on top of another, as we have seen, is covered by the earlier patent. According to the specification of the later, the improvement consists of the compactness of the rail, "which can be more readily secured to the floor pieces." Such improvement, however, is thought to have been perfectly obvious to the ordinary skilled workman and the means to produce the change in form were within his knowledge. Doig v. Morgan Mach. Co., 122 Fed. 460, 59 C. C. A. 616. As herein stated, the Koerner patent, No. 392,735, was infringed by the defendants, but as that patent has expired, only an accounting is decreed.

The improvement patent discloses no invention and as to such patent the complaint is dismissed without costs to either party.

So ordered.