WINDLE v. PARKS & WOOLSON MACH. CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1904.)

No. 85.

1. PATENTS—ANTICIPATION—CLOTH-MEASURING MACHINES.

The Windle patent, No. 507,300, for a cloth-measuring machine—the feature of novelty claimed being the use of a split and expansible ring for the ends of the measuring cylinder, and means for forcing the ends apart so as to enlarge the circumference of the cylinder to adapt it to the varying elasticity of the cloth to be measured—is void for anticipation; such rings having been previously used on other machines made and sold by the patentee.

2. SAME—DESCRIPTION OF INVENTION—RESORT TO DRAWINGS.

While a doubtful or ambiguous description in the specification of a patent may be aided and made plain by the drawings, they cannot supply the entire absence of any written description of a feature of the invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 243.]

Appeal from the Circuit Court of the United States for the District of Vermont.

For opinion below, see 128 Fed. 58.

Geo. N. Goddard, for appellant.

Nathan Heard, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The specification states that "cloth is now measured by contact with a rotating cylinder, which latter draws the cloth at the surface speed of the cylinder, each rotation of the cylinder being recorded." The proof shows that, besides the machines in which the cloth passed over the cylinder and was drawn by it, there

were machines in which the measuring cylinder rested on the cloth, and was revolved by the forward movement of the same. The latter may, for convenience, be called "undershot wheels." It is self-evident, and the record of earlier devices shows, that, while a narrow wheel might be used as an undershot one, efficient working would require a wheel broad enough to support the full width of the cloth when the latter passes over the wheel. Sometimes the measuring surfaces of these cylinders were unbroken, and sometimes they were composed of a succession of strips parallel with the axis of rotation, and close enough together to properly sustain the cloth. The specification proceeds:

"Goods to be measured vary very much as to the quality of elasticity; that is, some goods stretch much more than others when being fed by contact with the measuring cylinder, and some goods stretch so much that accurate measurement cannot be made by the usual cylinder. In my experiments to improve cloth-measuring machines employing a cylinder, and thereby overcome the trouble of inaccurate measurement, I have discovered that all fabrics may be accurately and satisfactorily measured, provided the measuring cylinder is adapted to be varied as to its circumferential length, as thereby it is possible to compensate by increase or decrease of such length for the extra stretch of the cloth; the cylinder being expanded in proportion to the stretch of the fabric of the cloth."

The record shows that in the earlier art an increase in the circumference of the rotating cylinder was accomplished by winding more or less cloth, or the like, around the periphery of the cylinder. It is stated in appellant's brief that increase in the circumference of the cylinder by providing some form of expanding device is "disclosed in patents long since expired," but no such patents are referred to, except the Hoyer patent, which has no cylinder, and we have not been able to find any in the record. The proof shows that the actual degree of expansion required is extremely slight; amounting, at most, to not more than one-eighth to one-fourth of an inch on a drum of two yards circumference.

The specification proceeds:

"The frame, A, and the inclined board, B, from which the cloth going to the cylinder is taken, are and may be all as usual. The frame has suitable bearings for the reception of the shaft, C, of the measuring cylinder, said cylinder being composed of a series of expansible spiders and a series of bars or legs, d, attached thereto by suitable screws." These bars are parallel to the axis of the cylinder, and together make up its circumference—a method of construction found in the earlier art (Watson patent). "The spiders are composed each of a metallic ring, D, split or separated as at D', and connected by spokes, d2, with a hub, dˣ, which is secured in suitable manner to the shaft, C, the ends of the rings having heels, d3, attached to or forming a part of them; said heels being separate pieces attached by screws, 18; the lower ends of the heels being normally drawn toward each other by a contracting device, herein represented as composed of a bolt, b, extended through them, and provided with two springs, each spring acting against a heel. Each hub has a spoke having a suitable bearing for a shaft, 5; said shaft having mounted upon it, at suitable intervals, pins or projections; said shaft and pins or projections constituting an expanding device, and being located one end of the pin in the slot between the ends of the ring, D, referred to, the other end of the pin resting between the heels, d3. The partial rotation of the expanding device causes the pins or projections thereof to act one against one end of the ring, the other against the heel connected to the other end of the ring, thus expanding the ring so that the circumference of the cylinder

composed of the lags or rings [sic., should be lags or bars] is thereby enlarged more or less; that depending upon the extent to which the rod, 5, is rocked or turned."

Means for turning the expanding device are then described, and the specification concludes:

"In practice the bars or lags, d, making up the exterior of the measuring cylinder, will be covered with sand or emery coated paper or cloth; such rough surface enabling the cylinder to positively engage the cloth, and carry it with it at the surface speed of the cylinder." The use of sandpaper for this purpose had been pointed out in Watson's patent (359,583, of March 15, 1887). "This invention is not limited to the exact construction shown of the cylinder, nor to its expanding device, as the same may be varied without departing from my invention."

The claims are:

"(1) In a cloth-measuring machine, a rotating shaft, and a cylinder having the rings of its spiders or heads split, combined with an expanding device for said rings or heads whereby the effective length of the circumference of the cylinder may be varied to compensate for the elasticity of the cloth being measured, substantially as described.

"(2) A rotating shaft having a series of spiders thereon, each having a ring split from one to its other edge to thus form ends, combined with an expanding device, a portion of which is located between the opposite ends of each ring, and devices to move said expanding device and confine it in its adjusted position to operate, substantially as described."

No contention is made that there is patentable novelty in widening the rotating cylinder by increasing the number of spiders, or skeleton wheels, and connecting them by slats, which, when covered with sandpaper, would constitute a rotating cylinder with an integral periphery. The one feature of novelty is the enlarging of the circumferential length, not by wrapping the cylinder with cloth or other material, but by enlarging the split rings, which are, so to speak, the tires of the skeleton wheels; thus expanding the slatted cylinder itself. If the prior art were confined to the patents which have been introduced, we should have no difficulty in sustaining the patent, for we find none in which the rotating cylinder, wide or narrow, has been expanded by springing it open from a slit in the circumference. It appears, however, that the patentee, Windle, had taken out an earlier patent (No. 230,381, July 20, 1880) for an undershot measuring wheel, which shows no split tire or rim, and, unlike the "spider" of the patent, is apparently solid. Subsequently, and long prior to the patent in suit, Windle cast some of these wheels with spokes, split their tires or rims, and inserted screw devices for pushing the tires open. The defendant concedes that "old Windle machines with a skeleton wheel have been in commercial use," and that "some of these old machines put out by Windle contained a skeleton wheel cast in the form in which it was designed to use the proposed expanding device." The proof shows that the rims of these wheels were only partly cut through for safety in shipment, but yet were cut sufficiently to split at the tap of a hammer. Complainant contends that such wheels were merely an "unsatisfactory and abandoned experiment." But the wheels that were sold and went into commercial use were not experiments. Their users were free to split them with a hammer tap, and to force them open with the screw device which had been inserted before they were sold for that

very purpose, and to use them expanded or contracted. One of those wheels is before us. Hub, four spokes, and rim or tire are all ·cast solid. The rim or tire is split midway between two spokes. There is a screw device for enlarging the split, and it has been found practicable with an ordinary screw-driver to enlarge it the necessary quarter inch. When Windle, several years before applying for the patent, made and sold wheels thus adapted to secure an enlargement of the measuring cylinder by pushing open the abutting ends of the rim or tire, he made such wheels a part of the prior art, and could not subsequently by patent reappropriate the features which they disclosed. These old wheels were unsatisfactory. As the complainant's expert ·says:

"This old Windle measuring wheel is made from a single casting, and the rim and spokes are integral with each other. If, therefore, the rim is cut through in any place, the gap in the rim cannot be opened without crowding apart the spokes on either side of the gap. There was no arrangement what-·ever whereby the rim can be expanded independently of the spokes. These wheels are made of cast iron, which is more or less brittle, and which cannot be bent or put under a bending strain without danger of rupture. Any attempt, therefore, to expand the rim of any old Windle measuring wheel, is very risky, as even a very slight expansion of the rim would be liable to break the latter."

The patentee has improved the structure of these expansible wheels, .and it is upon that improvement that complainant relies to sustain the patent. It is contended in the brief that:

"The Windle idea was that the spider should be made up of two things: ·(1) A central supporting structure, here shown as a hub with radial spokes; and (2) a split ring loosely connected with the central structure at its rim, .and bearing upon it the measuring surface, whereby the ring, as a complete entity, should be left free to be expanded .and contracted to vary the measuring circumference, independently of the central supporting structure."

It was upon this theory that the patent was sustained in the court below, the court saying:

"The necessary rigidity of the arms and rings in the old wheels appears to have prevented proper expansion and contraction of the circumference ·by this means. The plaintiff appears to have invented a split ring between the rigid rims and the measuring circumference, with means to expand and contract that, and thereby lengthen or shorten the circumferences, independ-·ently of the length of the rims."

The difficulty with this argument, however, is that it finds no support ·in either the specifications or the claims. In neither claim is there any suggestion of a loose attachment of the cylinder or of the rings to the spiders. The specification describes spiders, composed each of a metallic ring, split, and connected by spokes with a hub. There is no hint ·of any difficulty resulting from rigidity of structure, or of any correction of such difficulty by providing a looser connection of the parts. It is stated in the brief that:

"The drawing of the Windle patent shows the split ring pivotally con-·nected to one of the spokes at the lower end by a bolt, and to the two hori-·zontally disposed spokes by a slot and bolt connection, * * * so that the split ring could expand and contract throughout its length, independently of the central supporting structure."

But that is not the written description of the invention which the statute calls for. "A description which is said to be vague and uncertain may be made clear by the drawings, which are a part of the specification. An imperfect written description will be aided by correct drawings, but when the written description is not only silent in regard to a feature of the invention, but places the novelty upon a different and described feature, the drawings will not help an entire omission, because the necessity of a written description is made absolute by the statute. Doubtful or ambiguous specifications can be aided and made plain by drawings, but they cannot supply an entire absence of description in the specifications." Gunn v. Savage (C. C.) 30 Fed. 366.

In the case at bar the specification places the novelty upon the feature of a split and expandible ring, and it is that which is claimed. Inasmuch as such rings are found in the prior art, the claims cannot be sustained.

The decree is reversed, with costs, and cause remanded, with instructions to dismiss the bill, with costs.