98

## THOMPSON v. DICKE.
### Patent Appeal No. 4269.

Court of Customs and Patent Appeals.
Feb. 26, 1940.

Bartlett, Eyre, Scott & Keel, of New York City (Richard Eyre, of New York City, of counsel), for appellant.

Oscar H. Dicke pro se (I. Richard Paris, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the junior party Thompson, from the decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences in awarding priority of invention of the six counts of the issue to the

senior party Dicke. Dicke's application, which was filed April 2, 1930, is involved with a patent to Thompson, No. 2,001,439, issued May 14, 1935, on an application filed March 17, 1933. Dicke copied the claims from the Thompson patent for the purpose of interference.

Counts 1 and 2 are illustrative of the subject matter involved and follow:

"1. A single phase synchronous motor having a rotor and a field structure with two pole faces, each pole face comprising a shaded section having a plurality of teeth thereon and an unshaded section likewise having a plurality of teeth thereon; the teeth of the shaded section of each pole face being advanced relatively to the teeth on the unshaded section of that pole face.

"2. A motor according to count 1 wherein the teeth of the shaded section of each pole face are advanced relatively to the teeth of the unshaded section through an angle between one-fourth and one-half of the toothpitch."

While the involved invention is tersely and aptly stated in the counts, we think it is important to set out somewhat in detail certain features of each of the applications which were filed by the respective parties.

The invention of the counts is directed to an improvement in synchronous alternating current motors. The rotors of synchronous motors operate in step with the alternating current supplied to the motors. Current is supplied to a field coil, producing an alternating magnetic flux in the core and pole faces associated with the coil. The flux in the pole faces induces flux of opposite polarity in the rotor, which, as the rotor revolves, produces a torque tending to keep the rotor in motion. In some of the motors a section of the pole face is shaded and another section of the pole face is unshaded. Such a motor was old in the art when the parties hereto entered the field.

The specification of Thompson, the junior party, in great detail describes his invention which is an improvement on the old style synchronous motor, and such improvement is defined by the counts involved. He conceived the notion that if a section of the pole face was shaded and the other section unshaded (shading of pole sections being a usual expedient in the construction of certain types of motors), and the teeth of the shaded section advanced with respect to the position of the teeth of the unshaded section, many of the difficulties encountered with the old synchronous

motor would be overcome. It is needless to recount these advantages since they are conceded here. By the "shaded portion" of the pole face is meant placing a "shading band," which is a copper ring closed upon itself, around one portion of each pole face, which has a definite and admitted effect on the action of the rotor. His patent is entirely devoted to this improvement of a synchronous motor.

Dicke's application is for a "Time Indicating System." His specification and drawings are chiefly devoted to a clockwork mechanism operating by a spring which is auxiliary to and in aid of a synchronous motor in keeping the mechanism operating when the current goes off or lags owing to heavy load hours, etc. In figure 1 of his drawings he discloses with considerable detail the clockwork mechanism to which is attached a synchronous motor, and the synchronous motor in figure 1 is shown in diagrammatic form. It clearly shows, however, the shaded and unshaded sections of the bifurcated poles as well as the coil by which the magnetic flux is generated.

As a separate embodiment of his invention he also discloses in figure 2 of his drawings substantially the same clockwork mechanism as is shown in figure 1, which mechanism is operated by a synchronous motor in which there is no shading. The clockwork mechanism of the second embodiment may be wound by a motor. There was no claim in his application, until the claims at bar were copied, for a mechanism which specifically called for a synchronous motor which responded to the counts at bar. Dicke's specification states: "Although the synchronous motor $M^1$ shown in Fig. 2 may be exactly the same as the motor M, *it is preferably of slightly modified construction*. As shown the motor $M^1$ comprises a toothed rotor having either pointed or dull teeth, and a stator having projecting poles each having one or more teeth spaced to cooperate with the rotor teeth simultaneously." [Italics ours]

The Primary Examiner, in passing ex parte on the allowance of the claims (which are the counts involved) in Dicke's application, held in an elaborate opinion that figure 1 of Dicke's drawing showed everything the claims called for except that there was no structure there disclosed which would respond to the language of the claims requiring that the teeth of the shaded section of each pole face be advanced in a certain relation to the teeth of the unshaded section

of that pole face. In order that what we may say and what we may quote from the decisions of the tribunals of the Patent Office may be more readily understood, we think it proper to here insert the drawings of the application of Dicke as well as a photostatic enlargement of a part of figure 1 thereof. The latter was submitted to the Patent Office tribunals and was considered by them.

FIG. 1.

FIG. 2.

FIG. 3.

A.C. Voltage

A.C. Current

Flux in Teeth

FIG. 4.

INVENTOR

O. H. Dicke

Dicke appealed from the decision of the Primary Examiner in denying him the claims and the Board of Appeals reversed the decision of the examiner and held that said figure 1, together with certain language hereinafter quoted, found in the specification of Dicke, warranted the conclusion that he had sufficiently disclosed in his application all the elements of the claims.

An interference was subsequently declared and upon order to show cause why judgment on the record should not be entered against Thompson, the junior party (he having alleged no date prior to the filing date of Dicke, the senior party), Thompson moved to dissolve the interference on the ground of no disclosure by Dicke responding to the terms of the counts. Notwithstanding the decision of the board reversing the decision of the examiner as to Dicke's disclosure, the examiner, by reason of new matter not called to the attention of the board and additional arguments presented by Thompson, again held (in passing on the motion to dissolve) that Dicke's disclosure would not support the counts and granted Thompson's motion.

Dicke appealed to the board, the sole issue presented again relating to Dicke's disclosure. The board, notwithstanding the additional reasons assigned by the examiner, again held that Dicke had fully disclosed the elements of the counts and reversed the decision of the examiner.

The Examiner of Interferences then entered judgment on the record, awarding priority to Dicke, and Thompson appealed from his decision so doing to the board.

In the ex parte prosecution of the claims before the examiner, the party Dicke submitted his affidavit as well as that of one

Joseph Holt, who was a draftsman and who made the drawings accompanying Dicke's application. The affidavit of Dicke stated, among other things, that the drawing, over which there has been so much controversy, was made by Holt and that Holt asked him for more definite information as to the tooth spacing in figure 1. He stated that he told Holt that the angular spacing of teeth "in the rotor, in the unshaded section of the poles, and in the shaded section of the poles was to be the same, but that the teeth in the shaded section were to lead, in the direction of rotation of the motor (clockwise), the teeth of the unshaded pole a fraction of a tooth, and that if the flux lag in the shaded pole were exactly 90 electrical degrees this extent of lead or advance would be exactly one-half of a tooth, and that since the flux lag due to the shading ring 29 is a little less than 90 electrical degrees this extent of lead of the teeth on the shaded pole should be proportionately less, and Mr. Holt was then instructed to show the teeth in the shaded pole portions lead and unshaded tooth pitch locations (if continued) by a little less, say one to two actual degrees, than one-half tooth spacing. That affiant remembers checking the Bristol Board drawings when completed and was convinced that these instructions had been carried out." He also submitted with the affidavit a photostat, referred to as Exhibit 1, alleged to be an exact and enlarged reproduction of a part of said figure 1, which enlarged drawing accompanys this opinion. In said affidavit he attempts to show that the construction and location of the teeth and existence of the shading coil, as shown in the exhibit, will cause the flux passing through the large poles to lag behind the flux of the small poles "and thereby produce alternate attraction on the teeth of the rotor so that four distinctive pulls per cycle are produced on the rotor."

On the question of accidental disclosure, Holt's affidavit substantially corroborated that of Dicke and in addition said: "The affiant intended to draw the motor M so that the teeth in the shaded section of each pole lead the teeth in the unshaded section of such pole by a little less than one-half and considerably more than one-fourth tooth pitch, and that this was difficult, to do accurately in view of the small scale drawing that was made, and the fact that the enlargement photostat Exhibit A shows this to be true is due to the effort affiant made, and is not accidental."

After the decision of the board in the ex parte appeal and when the motion to dissolve was filed, Thompson submitted a lengthy affidavit which covered many phases of the situation but particularly stressed the fact that the board was in error in its ex parte holding that Dicke disclosed the elements of the claims involved, and stated that the board fell into error in its conclusion that: "If shading coils were provided without advancing the tooth spacing there would obviously be a tendency to exert torque on the rotor in alternately opposite directions. Such a construction would clearly enough be of no utility and would possibly be inoperative. It is clear from the specification as filed that appellant contemplated producing alternate attractions on the teeth of the rotor to produce four distinctive pulls per cycle instead of two as would be the case were all the teeth in alignment and were not shading coils used. This is clearly brought out at the top of page 4. There would obviously be no object in producing four pulls per cycle if two of these pulls were operative to oppose the other two as would be the case if the teeth of the shaded portion of the pole piece were not advanced."

Thompson argued, and the examiner has agreed with him, that by the shading of the pole pieces, which is disclosed by Dicke, four pulls per cycle would be provided, even though the teeth were not aligned in acordance with the counts; that therefore the language relied upon by the board which is hereinafter quoted, found in Dicke's specification, relating to *four distinctive pulls per cycle being produced on the rotor*, offered no suggestion that the teeth of the shaded section of each pole face should be advanced relative to the teeth of the unshaded section of that pole face. Moreover, the affidavit stated that no engineer or skilled worker in this art, from an examination of Dicke's specification, would conclude that it showed or was intended to show an arrangement of teeth in accordance with the counts.

Thompson pointed out that at the time Dicke filed his application, in which he made no mention of the arrangement of the teeth, there was "no standard commercial synchronous motor in any general use, provided with a shaded section and an unshaded section, one part being toothed and one not toothed, but synchronous clock motors having toothed rotors and toothed stators were long known and widely used," and that there was no distinct advantage

*in itself* in providing 4 distinct pulls per cycle rather than 2 but that by the proper tooth advances with the shading (the shading bringing about the four pulls), a more nearly *"continuous* net forward pull" was obtained and therefore a more stable motor was devised.

This information in affidavit form was before both the Primary Examiner and the board. The board in its opinion made answer to some of the new suggestions which had been advanced by the examiner when he ruled on the motion to dissolve. The board in reversing the examiner's decision sustaining the motion to dissolve said in part:

"In general, the teeth on the rotor are midway between the teeth on the unshaded poles of the stator, particularly at the top of the drawing. The examiner's holding is based on an apparent advance of the stator tooth at the bottom of the drawing. There is no holding that the positions of the rotor teeth with respect to the shaded poles of the stator is any different at the bottom than at the top. In both places the stator teeth are sufficiently advanced so they are substantially in line with the stator teeth.

"There is considerable argument in the record with respect to what the original drawings actually show. Dicke attempts to explain the apparent inclination of the rotor tooth at the bottom of his enlargement Exhibit A, filed April 2, 1930, as due to imperfections in the negative from which this enlargement is made. It is further contended that a direct enlargement from the Patent Office drawings does not show the decided inclination of the intervening tooth which is shown in the exhibit referred to.

"We do not think the matter can be fairly decided by a mere consideration of one tooth. In general, the rotor teeth bear the same relationship to the unshaded pole at the bottom as they do at the top and we think it obvious that this should be so. We know of no reason why one would use a different tooth relationship for parts having precisely the same phase relation. Obviously, such a different tooth relationship would have a tendency to disturb the synchronous advance of the rotor. It seems to us, on carefully reconsidering the Dicke disclosure, that the upper and lower pole pieces are consistent and that both show the relative advance of the shaded pole pieces which the claims define.

"In the Thompson brief an attempt is made to show that four distinctive pulls per cycle could be obtained without the relative advance which is defined in the counts. An affidavit has been filed by Thompson in which an attempt is made to graphically illustrate the forces to which the rotor is subjected under different conditions, including no shading of the pole pieces, shading without advance and shading with advance. While Dicke accepts the graphic illustrations furnished by Thompson in Exhibits 1 and 3, he does not accept that illustrated on Sheet 2. The graphs have been plotted with respect to the parts under maximum load. As plotted, we are unable to see that four distinctive pulls per cycle are produced. The final graph shows only two pulls per cycle, which pulls are made up of substantially coincident effects from the flux in the two poles. Moreover, in motors such as disclosed by Dicke, operation under full load conditions would seldom be encountered. The rotor and stator teeth would in general be in step with the current and there would be a tendency, as pointed out in our former decision, for the lagging flux to produce a decided counter-torque on the rotor."

The board in its decision now being reviewed makes no reference to the affidavits of either party but in its prior decision on the motion to dissolve reference is made to the affidavits of both parties. The decision of the board which reviewed the action of the examiner in the ex parte appeal stated that the board was of the opinion that the affidavits of Dicke and Holt, while they could not be used to supplement the disclosure of the drawing, were pertinent to the question of the disclosure being accidental.

In the board's decision on the motion to dissolve, it stated that it was its view that the relationship of the teeth called for by the counts was necessary if four distinctive pulls per cycle were obtained, and in its decision here being reviewed it stated that it had never held that the right to make the claims was based primarily on the drawings but "on a statement made in the Dicke application" which statement reads as follows: "It will be noted that the laminated field 28 has its poles bifurcated to constitute two large and two small poles, the large poles of which contain shading coils 29, so as to cause the flux passing through these latter poles to lag behind the flux of the small poles, and thereby produce alternate attraction on the teeth of the rotor *so that*

*four distinctive pulls per cycle are produced on the rotor."* [Italics ours]

Because of the importance of the issue presented, we have gone somewhat into detail in stating and describing the disclosure of Dicke. This has been done with a view of ascertaining whether or not Dicke's written application contains anything that could be regarded as a clear disclosure of the controverted element of the counts or would clarify and support any disclosure of the elements of the counts which might be found in his drawings.

▮ As before stated, Thompson's patent relates' solely to a motor and Dicke's application made no claim to a motor, as such, but was concerned with a clock movement which would keep the clock running when the synchronous motor ceased to operate for any reason. It is true that in explaining his invention, Dicke pointed out that either of two kinds of motor could be used—one kind which was shaded and another kind which was not. The language found in Dicke's specification, relied upon by the board and which we have quoted from its decision, we do not think is sufficiently clear (especially in view of the lack of clearness in the drawing) to comply with the mandate of the statute which requires that before any inventor shall receive a patent for his invention he shall "make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; * * *." 35 U.S.C.A. § 33.

If Dicke at the time of filing his application believed that in order to have four impulses to the cycle it was necessary to align the teeth of the rotor and the stator in accordance with the counts he surely would have said so, rather than to have stated what he alleges to be a result he was to obtain without mentioning the measures by which he obtained it. While it might have been his intention to have disclosed in the drawings what he says he told Holt to do and what Holt said he was told to do, and even if by any refinement of reasoning it could be concluded that the drawings disclose such teeth alignment, we are of the opinion that it would not be sufficient in view of our conclusion that the written specification describes nothing from which we necessarily would conclude that the teeth were so aligned.

▮▮ A disclosure in a drawing of a reference without any written description relating thereto may be a good disclosure for the purpose of refusing to allow a claim. In re Bager et al., 47 F.2d 951, 18 C.C.P.A., Patents, 1094. But a drawing alone is not sufficient to form the basis for the reissue of a patent nor a proper disclosure for the purpose of anticipation in an infringement proceeding. Eclipse Machine Company et al. v. J. H. Specialty Manufacturing Co., D.C., 4 F.Supp. 306, 313. Nor is it sufficient (except as to design inventions) to warrant the allowance of a claim based thereon (McCrady's Patent Office Practice, Sec. 172 and cases therein cited), or to validate a patent claim in an infringement proceeding. Permutit Co. v. Graver Corporation, 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163.

It is our view, and we think the record supports it, that one skilled in the art relating to synchronous motors and their uses, in examining the Dicke disclosure, would have had no instruction or teaching that to get the desirable and beneficial results he must advance the teeth of the shaded sector of each pole face relative to the teeth of the unshaded sector of that pole face. It has required here an enlargement of the drawing, the use of hairlike lines, and, to say the least, a too generous construction of the language of the specification to warrant even an argument that there was any disclosure of the involved subject matter. How could the art have been helped in constructing a synchronous motor, which, by the alignment of the teeth in accordance with the counts, would bring about a practically constant driving torque of the kind desired, by the vague and non-informative drawing, together with the quoted language which easily could have (and we think probably does have) reference to matters other than those in controversy?

We said in In re Crowell, 84 F.2d 206, 209, 23 C.C.P.A., Patents, 1246, 1252, where a somewhat similar situation was being discussed: "in our opinion, the statutory requirement (R.S. § 4888 [35 U.S.C.A. § 33]) for 'a written description * * * in * * full, clear, concise, and exact terms * *' is not properly met by terms capable of different constructions; nor does it meet the requirement of rule 70 of the Patent Office, the validity of which was upheld long ago

by the Court of Appeals of the District of Columbia, in the case of In re Mraz, 36 App.D.C. 435."

■ The "written description" in "full, clear, concise, and exact terms" required by the statute and the pertinent rules (34, 35 and 36) of the Patent Office, is not complied with if the language used in the patent application merely *hints* at the manner of construction and the characteristics of his device or if it merely suggests a result, the means for producing which are doubtful and unexplained.

The party Dicke has stated the rule with which we are here confronted in a quotation from the decision in Windle v. Parks & Woolson Mach. Co., 2 Cir., 134 F. 381, 385, which language first appeared in Gunn et al. v. Savage et al., C.C., 30 F. 366, 369: "A description which is said to be vague and uncertain may be made clear by the drawings, which are a part of the specification. An imperfect written description will be aided by correct drawings, but when the written description is not only silent in regard to a feature of the invention, but places the novelty upon a different and described feature, the drawings will not help an entire omission, because the necessity of a written description is made absolute by the statute. Doubtful or ambiguous specifications can be aided and made plain by drawings, but they cannot supply an entire absence of description in the specifications."

. Is it reasonable to conclude that the language in the specification of Dicke, which if applicable at all is ambiguous, is aided by a drawing such as we have here taken so much pains to describe—by a drawing concerning which the testimony of record of the experts of the parties is in direct conflict as to what it actually shows?

■ In view of all the circumstances to which we have adverted, we think the examiner was correct in holding, in the first place, that the counts were not readable on Dicke's application and that such disclosure as was made was not a compliance with the statute. Such claims would be out of place in any patent which might be issued to Dicke on his instant application. They would be interlopers. See Cleveland Gas Burner & Appliance Co. v. American Heater Corp., 8 Cir., 38 F.2d 760, 763.

In Brand v. Thomas, 96 F.2d 301, 303, 25 C.C.P.A., Patents, 1053, we were confronted with a number of circumstances comparable to those at bar. Thomas had copied a claim from a patent. We said: "As before stated, the law is well settled that one who extracts claims from an issued patent must show a clear prior disclosure. We do not think that the Thomas disclosure clearly discloses the axial alignment of the totalizers. Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner. Moreover, as has been said in so many well-considered cases where similar questions were under consideration, the Thomas device is so different from that of Brand, and the invention claimed and the features of his machine as disclosed differ from that of Brand to such a degree that the counts in controversy would be out of place in the Thomas application. * * *"

Dicke in his brief has called attention to other language in his specification which he thinks has a bearing on the situation. He refers to the fact that the specification says that motor M is not self-starting, points to the provision for shading coils, calls attention to the fact that his specification states that the rotor is operated one tooth per wave or two teeth per cycle of alternating current and that it also states that the two large poles and the two small poles "produce alternate attraction on the teeth of the rotor," all of which language is pointed out as explanatory of the language upon which the board relied in holding that such language "necessarily involved" the alignment of the teeth in accordance with the counts.

■■ We find nothing in the specification except the language quoted by the board which requires any discussion here, and it is our view that the specification contains no express teachings as to how the teeth must be aligned, and contains no language from which one skilled in the art would necessarily be led to construct the Dicke device in accordance with the counts. If one skilled in the art were constructing a synchronous motor he *might*, after seeing the Dicke disclosure, align the teeth in accordance with the counts, and it seems clear to us that he might not do so. Under such circumstances, the teachings of the application are not sufficient. They should be so clear that one skilled in the art could readily understand without experimentation or the exercise of the inventive faculty, how to build the new device in accordance with the

terms of the counts so as to obtain the desired useful results, and since in Dicke's specification no reference is made to the required alignment of the teeth, any language relied upon to do so must be such as to clearly suggest such an alignment and no other alignment. Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937.

For the reasons stated, the decision of the Board of Appeals is reversed and priority of invention in the counts at bar is awarded to the appellant Thompson.

Reversed.