32 C.C.P.A. (Patents)

**KEYES v. SLAYTER et al.**

Patent Appeal No. 4925.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Otto H. Eschholz, of East Pittsburgh, Pa. (James K. Ely, Ezra W. Savage, and Jo. Baily Brown, all of Pittsburgh, Pa., of counsel), for appellant.

Carl G. Staelin, of Toledo, Ohio (Clarence B. Zewadski, of Detroit, Mich., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Board of Interference Examiners of the United States Patent Office, awarding priority of invention to appellees as to the three counts involved, relating to an improvement in an insulated conductor.

The interference is between a patent to appellant (hereinafter referred to as Keyes)', No. 2,234,560, issued March 11, 1941, on an application filed November 16, 1938, and an application of appellees (hereinafter referred to as Slayter et al.) filed November 13, 1941, as a division of their prior application filed October 16, 1937.

The counts involved are claims copied by Slayter et al. into their said divisional application from the patent to Keyes for the purpose of interference and read as follows:

"1. An article of manufacture comprising a wire and a covering therefor, said covering comprising an inner layer of unwoven ꞌsubstantially alkaline-free glass fibers of the staple type adjacent the wire and an outer layer of substantially alkaline-᾿ free glass fibers of the continuous type, the layer of unwoven glass fibers forming a resilient backing for the outer layer, and a coating of insulating varnish on the outer layer of glass fibers, the insulating varnish impregnating the inner and outer layers of glass fibers of different types.

"2. An article of manufacture comprising a wire and a covering therefor, said covering comprising an inner layer of unwoven substantially alkaline-free glass fibers of the staple type applied directly around and over the wire and an outer layer of substantially alkaline-free glass fibers of the continuous type applied directly over and around the inner layer, the fibers of the inner and outer layers having an average diameter of not more than .00025 inch, the inner layer of staple fibers being sufficiently resilient to permit bending of the covered wire without damage to the outer covering.

"3. An article of manufacture comprising a wire and a covering therefor, said

covering comprising an inner layer of unwoven substantially alkaline-free glass fibers of the staple type adjacent the wire and an outer layer of substantially alkaline-free glass fibers of the continuous type, the layer of unwoven glass fibers forming a resilient backing for the outer layer."

It will be observed from the counts that the invention at bar relates to an insulated conductor in which the wire requiring insulation is covered first by what is termed an "inner layer" of unwoven, substantially alkaline-free glass fibers of the "staple type" and an "outer layer" of glass fibers of the "continuous type." The counts point out that the inner layer, being of staple fibers, is a "resilient backing" for the outer layer. The Keyes patent emphasizes the fact that the soft and fluffy fibers of the staple type, which are unwoven, form a protective insulating layer and co-operate with the outer coating of continuous fibers in a satisfactory way, and that the outer coating of continuous fibers gives smoothness and strength to the conductor. Keyes points out that the staple fibers are the product of a process wherein fibers are drawn from the melt by means of a steam blast, which breaks the glass into fine fibers of different length, averaging about 6 or 8 inches; whereas continuous fibers, as the name suggests, are drawn in great numbers from the melt and wound onto spools.

There is but one question involved, and we think it a nice one: did the Board of Interference Examiners err in holding, as did the Primary Examiner on Keyes' motion to dissolve, that the original application of Slayter et al. supports the controverted limitations in the counts.

Keyes concedes that if the counts are met by the disclosure of the original application of Slayter et al., priority must be awarded to them since Keyes claimed no date as early as that.

Keyes contends that the disclosure relied upon by the tribunals below and by Slayter et al. here is so indefinite and general that it should not be regarded as sufficient support for the very definite and limited invention defined by the counts. He argues that Slayter et al. not only did not disclose the invention with sufficient specificity and certainty, but that they did not claim the same in their original application. He urges, in substance, that at most the Slayter et al. disclosure is a dis-

closure of what "may" be used, and that this requires the application of the doctrine of In re Collins, 75 F.2d 1000, 22 C.C.P.A.(Patents) 1053, and such cases as Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A.(Patents) 1053, and Thompson v. Dicke, 110 F.2d 98, 27 C.C.P.A.(Patents) 931.

The disclosure relied upon by Slayter et al. in their original application is to be found in Fig. 8 of the drawings and in the following language of the specification:

"Fig. 8 illustrates another embodiment of the present invention in which a metal conductor 40 *is surrounded with a layer of intermatted fibrous glass* 41. The layer 41 may be built up of *juxtaposed rovings or slivers* overlying the conductor 40, or may be applied directly to the wire from a fiber collecting drum or cone through which the wire is passed axially during the process of forming glass wool.

"Overlying the matted layer 41 is a serving of tape or varnished cambric 42 which may be spiralled around the layer 41. The cambric or tape 42 may be of any suitable type as, for example, *it may be composed of an impregnated web or mat of fibrous glass or the like.* * * * The tape may also be formed on an ordinary tape loom using *glass fiber strands or twisted fibrous glass yarns.* If desired, it is also possible to form this tape of a web, mat, or interwoven fabric of combined fibrous glass and asbestos fibers or other mineral fibers. * * *" [Italics ours.]

Fig. 8 of the Slayter et al. drawings discloses that the fibers of the inner layer covering the wire are somewhat intermatted. Over these is the outer layer, which appears to be a smooth, wide tape. While the drawing itself does not indicate the fluffiness which characterizes the inner layer in the Keyes patent, it is thought that the drawing, when considered with the above-quoted language from the application, is of some aid in disclosing that the inner layer is of staple fiber.

It was the view of the board, and it is the contention of Slayter et al. here, that the word "intermatted" connotes the intermixing of short or "staple" fibers only, and that the continuous fibers will not lend themselves to an intermatting as would the short fibers. Slayter et al. point out that their inner layer "may be built up of juxtaposed rovings or slivers overlying the conductor" or may be "applied directly to the wire from a fiber collecting drum or cone through which the wire is passed axially

during the process of forming glass wool," and that Keyes' method of applying the staple fibers is exactly the same as theirs because Keyes states in his specification that this "layer [the inner layer] may also be felted or spun on to the wire direct from the glass reservoir or furnace or in a manner comparable to the known methods for applying asbestos to wire, as in the form of roving." It will therefore be noted that both parties specifically speak of the use of rovings in connection with forming the inner layer of fibrous glass.

We have found nothing in the glass fiber art which definitely defines the characteristics of "rovings" or "slivers." In other textile industries, however, "slivers" and "rovings" are the products of the carding and roving processes, which produce strands of fluffy fibers. See American Wool Handbook, 1st Ed., p. 310; Avram, The Rayon Industry, 2d Ed., pp. 126–129; Summary of Tariff Information, 1929, p. 1625. We have found one volume entitled Fiberglas Standards, published by Owens-Corning Fiberglas Corporation, which indicates that in the glass fiber art "rovings" and "slivers" are composed only of staple fibers. On page 6 of section G9.2.1, headed "Fiberglas Electrical Yarns", it is stated that staple fiber sliver is used extensively in cable construction as a space filler and is felted around the conductor, being usually covered by a braid or outside covering. Staple fiber roving, it is said, is used for the same purposes as sliver, i.e., as a space filling electrical insulation on cables. On page 2 of the same section there are photographs showing the apparatus employed for manufacturing both staple and continuous fibers. In connection with these photographs appear the following statements:

"Staple fiber is blown on to a traveling belt in the form of a web ribbon of *interlaced* fibers, from which it is gathered, without twist, as a *'sliver.'* * * *" [Italics ours.]

And

"Fiberglas Continuous Filament is drawn into a strand that combines the individual filaments from a large number of orifices. These strands of filaments are drawn without twist, one strand or more being twisted together to form a yarn."

Other sections (G9.4.1, "Fiberglas Electrical Insulating Tapes," and G9.5.1, "Fiberglas Electrical Braided Sleeving") point out that tapes, braids, and sleevings for covering electrical cables are made of both staple and continuous fibers.

It is to be noted also that Slayter et al., in their original application, state that the process of making the fibers may be in accordance with that disclosed in British patent No. 428,720 or in accordance with that disclosed in the co-pending Slayter and Thomas application, Serial No. 105,-405, filed October 13, 1936. In this connection the board stated:

"The British patent process is similar to the process described in the Keyes patent for producing staple fiber and admittedly relates to the production of staple fibers, and the application referred to admittedly relates to the production of continuous fibers. Thus the Slayter and Simison application Serial No. 169,500 [the original application] discloses the use of both staple and continuous glass fibers."

This statement is not challenged by Keyes, and he did not make either the British patent or the Slayter and Thomas patent No. 2,234,986 which later issued on the application Serial No. 105,405 referred to above, a part of the record here. So, under these circumstances, we must accept the statement of the board as being correct.

As to Keyes' argument that the original Slayter et al. application is indefinite in the use of the word "may," it will be noted that the term is used with reference to the inner layer in connection only with the alternative method of applying the layer to the wire. Just preceding this statement in the specification, it is definitely stated that the conductor *is* surrounded with a layer of intermatted fibrous glass. It is not seen how the use by Slayter et al. of the term "may" in the manner stated, and under the circumstances at bar, could possibly be regarded as an indefinite disclosure relating to the use of glass fibers of the staple type in forming the inner layer, so as to make applicable the doctrine of such cases as Brand v. Thomas, supra, and the others which Keyes invokes.

In Brand v. Thomas, the issue was whether or not a drawing disclosed inherently that the totalizers of a calculator were in axial alignment. It was our conclusion that one following the teaching of Thomas in constructing his calculator would not necessarily make the totalizers in axial alignment; that he might or might not do so; and that such a disclosure was not sufficient to support the counts. In the

case at bar, according to our conclusion, Slayter et al. have disclosed two ways of making the thing, and certainly it cannot be said that by disclosing two ways they have not disclosed one. Keyes in substance argues that his invention is defined with precise limits; that its utility rests essentially in using staple fibers for the inner·layer and continuous fibers for the outer layer; and that this concept is not regarded as of importance by Slayter et al., even if it be held that they disclose the two ways of doing the thing. Concluding as we have that Slayter et al. disclose two ways of accomplishing their purpose, it would seem obvious that Keyes is not entitled to a patent on one of the ways of doing the thing which Slayter et al. disclose. It follows, therefore, that the doctrine of the cases relied upon by Keyes is not applicable to the facts of the instant case.

While the disclosure of Slayter et al. in the original application is not so clear as it might have been made, it is clear enough, in our judgment, to support the counts. See Padgett v. Warner, 104 F.2d 957, 26 C.C.P.A.(Patents) 1403; Bloodhart v. Levernier, 64 F.2d 367, 20 C.C.P.A. (Patents) 917. One of the tests which we think proper to apply here is: would the original disclosure have been sufficient to justify the allowance of the instant counts as claims in a patent issued thereon. We think the answer to this question must be in the affirmative.

Contrary to the contention of Keyes that Slayter et al. were interested only in the alkaline-free glass itself as an insulating medium, Slayter et al. were claiming in their original application substantially the invention here involved. For instance, claim 14 of the original application reads as follows:

"14. An article of manufacture which comprises a cable comprising an electrical conductor, a filling thereover of fibrous glass roving, and a covering over said filler composed of a fibrous glass varnished cambric."

Fibrous glass roving was mentioned as the "filling," over which a "covering" of fibrous glass varnished cambric was to be placed. It is true that in the original application there were claims for the insulating glass, for the alkaline-free glass, and for articles of manufacture in which such glass is used. Division was required, and the divisional application involved in this interference contains claims to the insulated conductor only.

In passing, it seems proper to say that Keyes has, by the use of the terms "staple" and "continuous" and by defining them, definitely divided glass fibers into two classes. He states:

"In manufacturing the glass fibers utilized in this invention, two processes are now generally employed. These are known as the continuous filament process and the staple fiber process. In the continuous filament process, glass of predetermined composition is melted and continuous filaments, usually 102 in number, are drawn from the melt onto a spool after which the filaments are worked into yarns, tapes, etc., in a manner similar to the making of rayon. As distinguished from the continuous filament process, the staple fibers are produced from the molten glass by drawing them from the melt by means of a blast of steam applied to the glass as it leaves the reservoir, thereby breaking the glass into fine fibers of different length. As a general rule, the staple fibers are not over from 10 to 12 inches in length, the average being about 6 to 8 inches. The staple fibers may be worked into yarn in a manner similar to the process in making cotton yarn."

If there are but two processes generally employed in the glass fiber art, as this statement would indicate, it seems to us that the position of Slayter et al. is considerably strengthened here. In other words, Slayter et al.'s inner layer of "intermatted fibrous glass" composed of "rovings" or "slivers" could not be· of the continuous filament type, and therefore it must be of the staple type—the only other type, according to Keyes, which is generally known in the industry. This conclusion is supported by the glass authority to which we have referred hereinbefore.

From the foregoing it follows that the board committed no error in awarding priority of invention of the involved counts to the party Slayter et al., and its decision so doing is affirmed.

Affirmed.