## BLOODHART v. LEVERNIER.*

### Patent Appeal No. 3067.

Court of Customs and Patent Appeals.
April 12, 1933.

Bernard F. Garvey, of Washington, D. C., for appellant.

John Howard McElroy, of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee, Martin W. Levernier.

The interference is between appellant's patent No. 1,676,851, in which the counts originated, issued July 10, 1928, on an application filed June 25, 1927, and appellee's application No. 126,484, filed August 2, 1926.

The invention relates to liquid dispensers, particularly to portable liquid soap dispensers.

*Rehearing denied May 29, 1933.

The interference involves five counts. Counts 1 and 5 are illustrative. They read:

"1. A liquid dispenser, comprising a pump, a stationary part, a part rotatable with relation thereto, and supported thereby, a discharge nozzle on the rotary part in communication with said pump, and movable about the axis of rotation of the rotatable part, and a manually operated means on the stationary part for operating said pump."

"5. A liquid dispenser, comprising a stationary part, a member swiveled thereon, a liquid reservoir and a pump carried by said member, a nozzle carried by the reservoir and in communication with the pump, said pump including a piston rod arranged axially of the same member, and manually operated means mounted on the stationary part and having swiveled connection with said pump for operating the same."

Counsel for appellant moved to dissolve the interference on the ground that appellee had no right to make the claims constituting the counts in issue.

The issue before us, raised in the Patent Office by appellant's motion to dissolve, is, Does appellee's application, as originally filed, disclose "a rotatable support for the discharge nozzle" of his device?

Appellee made no reference in his original application to that feature of the involved invention. Subsequent to the issuance of appellant's patent, appellee amended his specification by inserting therein the following: "If it is desired to change the point of discharge of the soap without shifting the base, this can be effected by turning the delivery tube 54, which causes the casting 25 to turn on the top of the cap 13 and the plug 43 to turn in its opening in the cross head 39, the entire holder being thus rotatable on the standard within the substantially 180° limits caused by the contact of the tube 54 with the links 38. If a greater swiveling action is desired, I omit one of the links 38, when the tube 54 can be swung through a full 360° due to the play of the remaining link 38."

He also copied the involved patented claims, and the interference was declared.

Subsequent to the oral arguments in this court, counsel for appellee filed a motion for the issuance of a writ of certiorari directed to the Commissioner of Patents, commanding him to certify to this court a copy of a notice filed by appellee, July 13, 1931, electing to have all further proceedings conducted as provided by section 4915 of the Revised Statutes (U. S. C., title 35, § 63 [35 USCA § 63]), and a copy of the Commissioner's decision, dated July 16, 1931, refusing to enter an order dismissing appellant's appeal. Counsel further moved that appellant's appeal be dismissed, for the reason that the court was without jurisdiction to determine the issues raised thereby, due to the fact that appellee elected to have all further proceedings conducted as provided by section 4915, supra.

In the case of Farmer et al. v. Schweyer, 58 F.(2d) 1056, 1057, 19 C. C. P. A. 1247, this court, in an opinion by Graham, P. J., reviewed the decisions in the cases of MacGregor v. Chesterfield (D. C.) 31 F.(2d) 791, and Heidbrink v. McKesson (C. C. A.) 53 F.(2d) 321, construed the provisions of sections 4911, 4915, and 4918 of the Revised Statutes (U. S. C., title 35, §§ 59a, 63, and 66, respectively [35 USCA §§ 59a, 63, 66]), and, among other things, said: "Viewing these various provisions of the statute together, we are of opinion that it was not intended by the language of section 4911 to authorize the filing of a bill in equity under said section 4915 by a patentee. If a patentee is involved in an interference and is unsuccessful in the Patent Office, and appeals to this court, he may not be forced to go into equity by notice of the appellee, but has a right to pursue his appeal and seek his remedy in this court. The compelling reason leading to this conclusion is that the court of equity could afford him no relief under said section 4915, even were he authorized by the law to file his bill in such court."

On the authority of that decision, the motion is overruled.

We proceed to a consideration of the case on its merits.

In his decision sustaining appellant's motion to dissolve the interference, the Law Examiner, among other things, said: "The possibility of oscillating the delivery nozzle or any part of the structure would not be apparent from the original disclosure of the party Levernier, who failed to attribute in the original description any oscillatable character to such structure or to show in the drawings structure which is apparently oscillatable. His right to make claims 1 to 5 must be predicated upon the possibility of so loosely screwing plug 43 into the threaded opening of the vertically reciprocable casing 45, that the plug, casing container 22, and bottom casting 25 can oscillate on the base structure. Apparently if the plug is tightly screwed in-

to the casing 45, the latter will be immovably fixed to cross bar 39, which cannot oscillate because the upright L-rods 38 are prevented from turning by the shape of openings 59 in the base. The latter manner of assembly is considered obviously the one intended and the one evidently to be used, since the casing 45 is connected to cross bar 39 for the purpose of reciprocating it by up and down movement of L-rods 38."

In its decision, reversing the decision of the Law Examiner, the Board of Appeals, in describing the rotatable support for the discharge nozzle, which, among other things, includes a reservoir, a pump, and the necessary parts and attachments for making the same operable, and in applying the involved counts thereto, among other things, said: "This unit comprises a lower closure member 25 for the soap container which is provided with a cylindrical extension and a circular skirt adapted respectively to be mounted in a cylindrical sleeve and to engage a horizontal surface on a cap which surmounts the supporting column of the device. These parts appear incapable of preventing rotation and it seems reasonable to assume that they were given the form stated to render the member 25 readily rotatable. The container proper is mounted on the part 25 and is clamped between it and a cap member 29, the parts 25 and 29 being screwed to the barrel of the dispensing pump and to a sleeve extending therefrom. Slidable axially in the part 29 is a filler and plunger operating extension the filler opening of which is plugged by a shouldered cap screw. The discharge nozzle is mounted in the extension and moves axially therewith. Axial movement of the extension is effected by pressure indirectly applied to the cross head 39 through which the cylindrical shouldered portion of the cap screw passes. The only apparent means for preventing rotation of the unit described is the cap screw and this can only prevent it if the shouldered cylindrical portion is shorter axially than the thickness of the cross head 39. The only apparent reason for shouldering this member and providing the shouldered portion with a cylindrical surface is to prevent such a clamping being accidentally effected. We see no necessity for screwing this plug loosely in place to make the parts relatively rotatable though even if unshouldered it would be difficult to turn the plug sufficiently to clamp the parts by engaging the knurled surface thereof with the fingers."

Due to the fact that the date alleged in appellant's preliminary statement for con-ception of the invention was subsequent to the filing date of appellee, and it having been held by the Board of Appeals that appellee could make the claims constituting the counts in issue, the Examiner of Interferences awarded priority of invention to appellee.

On appeal by appellant from the decision of the Examiner of Interferences, the Board of Appeals again fully considered and discussed the issues now before us. In concluding its discussion of appellee's original disclosure, the Board said: "The mounting provided for the reservoir in Levernier's disclosure is made separate from the fixed support, is provided with an annular rib resting on the fixed support and has a central stem clearly shown to be cylindrical as it must be to fit the recess and extension in the column caps, which are described as tubular. In our opinion the disclosed structure inherently involves rotatability of the liquid container and parts carried thereby."

Does appellee's amendment involve any material addition to, or variance from, the original application? If, after a careful scrutiny of the original application, that question must be answered in the affirmative, the decision of the Board of Appeals must be reversed. An applicant is not entitled, by amendment, to so enlarge the scope of an original application as to enable him to appropriate the inventions of others. Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Lindley v. Shephard, 58 App. D. C. 31, 24 F.(2d) 606, and cases cited; Lopulco Systems v. Bonnot Co. (C. C. A.) 24 F.(2d) 510. If, however, such rotatable feature is inherent in the structure and use of the apparatus disclosed and claimed in appellee's original application, or if it is otherwise clearly disclosed therein, appellee is entitled to make the involved counts, and the decision of the Board of Appeals must be affirmed.

We have given the issues, the arguments of counsel, and the decisions below careful consideration. The record contains two comprehensive and obviously carefully prepared decisions by the Board of Appeals, and we find ourselves in complete accord with its conclusions. We have but one observation to make in addition to what has been said by the Board.

It will be observed that the involved counts refer to "a manually operated means on the stationary part for operating said pump." That means, however, is not the only one disclosed in appellee's original application by which the pump may be operated.

He stated therein that it might be operated by the application of pressure either to the foot pedal or to the "plug" or "cap screw," described in the decisions of the Board of Appeals.

To properly operate appellee's apparatus by the application of pressure to the "plug" or "cap screw," rather than by the use of the foot pedal, some "play" between the "plug" or "cap screw" and the cross head would seem to be desirable, because, without it, considerably greater pressure would obviously be required. The "shouldered cylindrical bearing surface" of the "plug" or "cap screw," clearly disclosed in appellee's drawings and referred to by the Board of Appeals, but evidently overlooked by the Law Examiner, provided the necessary "play" and prevented the clamping of those members. Although the "plug" or "cap screw" was not fully described in appellee's specification, it is obvious that its "shouldered cylindrical bearing surface" was essential to the proper performance of its functions, and that the disclosure in the drawings of such bearing surface was not accidental. Furthermore, the drawings may properly be used as an aid in interpreting the specification. Permutit Co. v. Graver Corp., 284 U. S. 52, 60, 52 S. Ct. 53, 76 L. Ed. 163.

We are of opinion that the rotatable feature of the involved invention is inherent in the structure and use of the apparatus disclosed in appellee's original application, and that the amendment thereto does not involve any material addition to, or variance from, it, and that therefore appellee is entitled to make the counts in issue.

The decision is affirmed.

Affirmed.