49 CCPA

### Application of Adolph WOLFEN-SPERGER.

### Patent Appeal No. 6790.

United States Court of Customs and Patent Appeals.

May 18, 1962.

firming the examiner's rejection of claim 33, the sole claim before us, "as failing to read on applicant's disclosed structure." Appellant presented claim 33 in his application Ser. No. 521,495, filed July 12, 1955, entitled "Ball Type Valve," requesting an interference on this claim with Kaiser Patent No. 2,868,498 issued January 13, 1959, from which patent the claim was copied.

Appellant's invention relates to a ball type valve "for use in large high pressure fluid pipe lines up to 30 inches and more in diameter." Appellant's valve contains a shut-off member in the form of a roughly spherical ball plug having a diametal bore therethrough. The plug is rotatable about an axis perpendicular to the bore. When the bore in the ball plug is in alignment with the axis of the pipe line with which it is used, the valve is fully open. When the plug is rotated approximately 90° out of alignment with the pipe line axis, the valve is closed.

Claim 33 reads:

"33. In a valve device, in combination, a valve housing member formed with a bore therethrough; a valve arranged in said housing member, said valve being formed with a passage therethrough and being movable between open and closed positions wherein said passage is in and out of registration with said bore, respectively; and sealing means interposed between said housing member and said valve, said sealing means including an annular sealing member coaxial with said bore of said housing member, said members being so shaped as to form between themselves *an annular chamber* of substantially rectangular cross-section bounded by an inner face, an outer face and two side faces, and *a packing ring* arranged in said chamber, said ring being made of a resilient material

Strauch, Nolan & Neale and James E. Nolan, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals af-

-* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

and being compressed between said side faces of said annular chamber and *having, in untensioned condition, a mean diameter corresponding approximately to the mean diameter of said chamber and a radial width smaller than the radial width of said chamber."* [Emphasis added.]

The sole question before us is whether the above italicized portion of appellant's claim is readable on his disclosed structure, one embodiment of which is reproduced in part below.

The above drawing shows appellant's valve in the open position. Accordingly, fluid would tend to flow, if the high pressure side of the pipe line were to the right in the drawing, through openings 66, 100 and 106 in, respectively, valve housing 28, seat ring 80 and ball plug 24. The packing ring of the claim is shown in section at 90, seated in its annular chamber. It is, when unstressed, of circular cross-section and is a large "O-ring."

The main functions of appellant's O-rings are set forth in his specification as follows:

"When the valve is open the large O-rings at the end walls of the seat rings [appellant's device, in its entirety, has two such O-rings and seat rings], each having a cross-sectional diameter of approximately one inch and compressed in assembly approximately one-eighth inch, by their inherent resilience tend to center the seat rings and ball inside the valve body cavity with equal clearance between the back face of each seat ring and its valve body seat. The O-rings also provide a fluid tight seal between the back face of the seat ring and the valve body * * *. In valve closed condition the resilient upstream O-ring holds the upstream seat ring in full surface contact with the ball and away from the valve body, and permits line fluid pressure to enter and bias the seat ring against the ball."

The Kaiser patent discloses, in Fig. 2 reproduced below,[1] O-ring 35 seated in chamber 34. In other figures the patent shows several modifications of this structure.

Figure 2 of Kaiser — 2,868,498

When inserted in this chamber, the cross-sectional diameter of O-ring 35 is such that (1) "the said O-ring exerts an elastic pressure on the annular piston 26 * * * and presses the annular piston against the surface 36 of the ball plug 16," and that (2) "the O-shaped packing ring 35 is arranged in the compartment

1. This reproduction is from appellant's brief and he has added some reference numerals (taken from other figures) and the dimension lines d' and w'. Ring 35 has mean diameter d' and compartment 34 has width w'.

34 spaced from the inner and outer faces thereof when the packing ring 35 is in untensioned condition." [2]

With the above comments on the disclosures of appellant and Kaiser as a background, we now turn to the italicized portion of claim 33, supra.

As noted by the board, this portion of the appealed claim recites two dimensional relationships, the first of which is that the "packing ring," in "untensioned condition," has "a mean diameter corresponding approximately to the mean diameter of said chamber." Looking at appellant's Figure 5, it is obvious that the ring *as shown* does have a mean diameter corresponding approximately to the mean diameter of the annular chamber formed by channel 88 and surface 84. The point raised by the Patent Office as to this disclosure, however, is that there is *no evidence* that the O-ring 90 *as it appears in channel 88* is in "untensioned condition." The board put it this way:

"  *  *  *  it is our opinion that the same symmetrical cross section would be obtained if the mean diameter of the untensioned ring were *smaller* than that of the chamber, *the ring being installed in the chamber by suitably stretching.*" [Emphasis ours.]

The Patent Office cites in support of its position this court's decision of Brand v. Thomas, 96 F.2d 301, 25 CCPA 1053, wherein this court said that a "Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor." These words, however, are a two-edged sword. Using the reasoning of the Brand case, we find that a disclosure, unequivocal in and of itself, may not be held wanting merely by reason of a *speculation* that one skilled in the art might

interpret the teaching of the inventor in a remote and equivocal manner. We find nothing in the disclosure of appellant, or elsewhere in the record, to suggest that one skilled in the art would place in appellant's "chamber" of Fig. 5 an O-ring which had to be stretched to fit the groove and which would, in consequence, be in tensioned condition. Indeed, it seems to us that the Patent Office is stretching its imagination to find a lack of disclosure in this regard. We cannot agree with the board that appellant does not disclose the first-noted dimensional relationship. We do not think it was incumbent on the applicant to state, in respect of every O-ring in his structure, that it was so sized as to be untensioned when put in place. One would normally expect that to be the case.

The second dimensional relationship recited in claim 33 which the Patent Office considered not supported by appellant's disclosure is that, in untensioned condition, the packing ring has "a radial width smaller than the radial width of said chamber" (w' in Kaiser Fig. 2, supra).

In the partially flattened condition shown in appellant's Fig. 5, supra, packing ring 90 is shown as having a radial width which is the same as that of the chamber, which is the width of the annular groove 88 (the vertical dimension as shown in the drawing). However, in that showing the O-ring is not "untensioned." It is compressed almost to the full extent possible. The only problem in finding support for this claim limitation in appellant's disclosure arises from having to decide what one skilled in the art would understand the relative radial widths of the O-ring and the groove to be when the O-ring is in its uncompressed condition, a state nowhere illustrated in the drawings. The simple question which must be answered is whether it would

2. In the Kaiser structure, with the valve 16 closed and fluid attempting to flow outwardly through chamber 34 (to the right in Fig. 2), Kaiser discloses that O-ring 35 will be urged radially outward. Such radial expansion puts O-ring 35 under circumferential tension. In Kaiser, "un-

tensioned condition," accordingly, refers to the condition of O-ring 35 when fluid pressure is *not* urging the O-ring to expand radially within chamber 34. However, for the purposes of deciding this case we do not limit it to that connotation and give it its ordinary meaning.

be apparent to one skilled in the art that, on the basis of the whole disclosure, the ring's cross-sectional diameter when relaxed would be less than the radial width of "said chamber," i. e., less than the dimension in appellant's structure corresponding to dimension w′ in Kaiser Fig. 2, supra.

On this point the board said:

"* * * appellant refers to Figure 5 of his drawings and contends that if the axial depth of the chamber, which is disclosed as ⅞ inch, is used to establish the scale of Figure 5, the radial depth measured on the same scale is 1⅛ inches, and since the cross-sectional diameter of the untensioned ring is disclosed as being 1 inch, the relationship claimed is shown in Figure 5. This argument is not convincing, since it is well established that drawings alone cannot form the basis of a valid claim. Thompson v. Dicke, 27 CCPA 931; 517 O.G. 564; 110 F.(2d) 98; 1940 C.D. 269. In re Olson, 41 CCPA 871; 685 O.G. 700; 212 F. (2d) 590; 101 USPQ 401; 1954 C.D. 167."

The board's statement that "drawings alone cannot form the basis of a valid claim" is too broad a generalization to be valid and is, furthermore, contrary to well-settled and long-established Patent Office practice. We cannot regard it as "well established." Consider, for one thing, that the sole disclosure in a design patent application is by means of a drawing. Rule 153, 35 U.S.C.Appendix. For another thing, consider that the only informative and significant disclosure in many electrical and chemical patents is by means of circuit diagrams or graphic formulae, constituting "drawings" in the case. To put this matter in proper perspective, however, consideration must also be given to actual Patent Office practice, taken in conjunction with the fundamental requirement that the invention claimed must be disclosed, in terms comprehensible to one of ordinary skill in the relevant art.

Patent Office Rule 118 authorizes, by implication at least, the amendment of the words in the written specification so as to add statements not originally contained in it to *conform* to originally filed drawings. Commenting on that rule, the Manual of Patent Examining Procedure, 3rd Ed. (MPEP), says, 608.04 (repeating a statement in 608.01(1):

"In establishing a *disclosure* applicant *may rely* not only *on the* specification and *drawing* as filed but also on the original claims if their content justifies it." [Emphasis ours.]

The practical, legitimate enquiry in each case of this kind is what the drawing in fact discloses to one skilled in the art. Whatever it does disclose may be added to the specification in words without violation of the statute and rule which prohibit "new matter," 35 U.S.C. § 132, Rule 118, for the simple reason that what *is* originally disclosed cannot be "new matter" within the meaning of this law. If the drawing, then, contains the necessary disclosure, it *can* "form the basis of a valid claim."

This is not to say that the Patent Office, before permitting a patent to issue, cannot at the same time enforce compliance with another requirement, found in its Rule 75(d), that "the terms and phrases used in the claims must find clear support or antecedent basis in the description *so that the meaning of the terms in the claims may be ascertainable by reference to the description.*" [Emphasis ours.] This matter is further elucidated in MPEP 608.01(o) which clearly contemplates that it may be necessary to change or add to the language of the specification so as to provide proper support for the language of "new claims." It says:

"While an applicant is not limited to the nomenclature used in the application as filed, yet whenever by amendment of his claims, he departs therefrom, he should make appropriate amendment of his specification so as to have therein clear support

or antecedent basis for the new terms appearing in the claims."

This would appear to be particularly applicable to situations, such as that at bar, where the applicant copies a claim from the patent of another, since it is unlikely that independent specification writers will use identical language in describing even identical embodiments of an invention. A copied claim is, in a mechanical case, almost certain to use terminology which will not find "antecedent basis" in the application of the one who copies it. But that is not the issue. The issue here is whether there is supporting "disclosure" and it does not seem, under established procedure of long standing, approved by this court, to be of any legal significance whether the disclosure is found in the specification or in the drawings so long as it is there.

McCrady, Patent Office Practice, Fourth Edition (1959), states in Sec. 54 (p. 77):

"Matter disclosed in the drawing alone, and not described in the specification as filed, has been held sufficient to support valid claims."

One of the cases cited in the footnote in support of that statement is this court's decision in Kendall v. Searles, 173 F.2d 986, 36 CCPA 1045, wherein one issue, raised throughout the interference by Kendall's motion to dissolve on the ground that Searles' disclosure did not support the counts, was whether Searles disclosed a ball-bearing, molded-plastic pulley wherein the parts were concentric and in axial alignment. This court said:

"The board noted that appellee [Searles] made no statement in his specification about accurate concentric and axial alignment of the pulley work surface and the bearing raceway. The board further noted, however, that it appeared from appellee's drawings that such alignment was present * * *.

"The limitations of the counts appear to be clearly disclosed by appellee. His drawings show that all parts of his construction are concentric, * * *. Accordingly, the court finds no manifest error in the concurring decisions of the tribunals of the Patent Office with respect to their disposition of appellant's motion to dissolve the interference."

■ In support of its view in the instant case that "drawings alone cannot form the basis of a valid claim," i. e., furnish supporting disclosure for a copied claim, the board cites In re Olson, 212 F.2d 590, 41 CCPA 871. We have carefully considered that opinion and it is our view that it stands only for the proposition that if drawings which are relied on for supporting disclosure *do not in fact contain it*, then disclosure is lacking. The structure recited in Olson's claim and alleged not to be supported by his disclosure was equal spacing of certain ball seats in a self-sealing hydraulic fluid line coupling. The board pointed out that "the distances and dimensions involved are of the order of *a few thousandths of an inch* and it appears obvious that the drawing alone cannot be scaled off, *under these circumstances*, to show that any particular distances or sizes are exactly equal when the specification is completely silent in this respect." [Emphasis ours.] That is the decision this court affirmed. We do not find in that decision any support for the broad rule stated by the board in the instant case. We note, in passing, that the Patent Office Board of Appeals, as appears from its opinion in the record on file in this court, said, " * * * while we agree with appellant that it is proper, under certain circumstances, to amend the specification to include subject matter shown in the drawing, we do not agree with him that this is proper in the present application." This immediately precedes the passage from the board opinion quoted in the Olson opinion. The Solicitor's brief (p. 6) also admitted, "Had any * * * clearly disclosed features been neither disclosed nor claimed in the original application, claims could have been added to these features, and the specification amended to describe them."

The other case cited by the board is Thompson v. Dicke, 110 F.2d 98, 27 CCPA 931. There too we find the situation to have been, not that drawings *cannot* contain supporting disclosure by themselves, but that the drawings before the court did not in fact contain it. There was great diversity of opinion on this fact issue, the examiner and the board twice disagreeing on the matter and this court finally agreeing with the examiner, basing its decision on the findings that the drawing was "vague and non-informative" while the specification "contains no express teachings."

In this phase of patent prosecution, the question is not whether an applicant has put his application in such condition that a patent can properly be issued to him but, rather, whether his original disclosure shows with sufficient clarity that he was in possession of an invention being claimed by someone else so as to establish his right to make the claim *and* to so amend his application, without adding anything new in the way of subject matter, that a patent *might* be issued to him containing such claim.

Before leaving this point of law, we think it well to mention that we are not unaware of the existence of a sentence in one of this court's opinions, not referred to by the board or in the Patent Office brief, which closely parallels what the board said in this case. In Vickery v. Barnhart, 118 F.2d 578, 28 CCPA 979, at p. 988, the court said:

> "It is well established that drawings alone in a patent application cannot form the basis of a valid claim, and the fact that 'There is nothing in the specifications * * * to refute this showing' (of the drawing) is immaterial."

The phrase quoted by the court was from appellee's argument. The court did not say when or wherein it had been so "well established" except to quote extensively from concluding obiter dictum in the opinion in Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163. We have carefully considered the Permutit case without finding a sound basis for the broad conclusion above quoted. In Permutit the Supreme Court predicated its decision on a finding that the invention being asserted by the plaintiff as patentable over the prior art—the use in a water softener of a "free" as distinguished from a "locked" bed of zeolites—was nowhere either disclosed *or claimed* in the patent in suit. It held the patent invalid for failure to comply with R.S. 4888 (predecessor to 35 U.S.C. § 112). We do not, therefore, regard the above passage in the Vickery case as sound law. As to the facts respecting the drawings involved in that case, the Examiner of Interferences based his view on his finding that, "The dimensions in the drawing are so close that any difference in the minimum diameters [as claimed] could be attributable to a draftsman's error."

We cannot, for the reasons above stated, accept the assumed legal basis for the board's decision, because we deem it to be nonexistent, and turn now to the fact issue as to whether there is disclosure in appellant's application to support the count limitation that "in untensioned condition" the O-ring has "a radial width smaller than the radial width of said chamber," referring to the chamber in which it is positioned when in use. This entails a consideration of the combined disclosure of the specification and drawings of appellant's application, for appellant does not rely on the drawings alone. His contention is "that there is a clear, correlated pictorial and descriptive dimensional disclosure."

The specification states:

> "*The drawings illustrate* a thirty inch sphere valve *embodiment* wherein the *relative dimensions* and various structural reinforcing ribs and members having [sic] been designed for use in a specific system." [Emphasis ours.]

In the drawings, Fig. 5, copied above in part, is but one of four substantially identical illustrations of the O-ring seal in question, the relative dimensions in particular being the same throughout the drawings which, it can be observed, are

not in the least sketchy or diagrammatic in character. These showings of the seal are enlarged, carefully drawn details wherein the relative width and depth of groove 88 is clearly shown.

The specification states:

"When the valve is open the large O-rings at the end walls of the seat rings, each having a cross-sectional *diameter of approximately one inch* and *compressed* in assembly approximately *one-eighth inch*, by their inherent resilience tend to center the seat rings and ball inside the valve body cavity with equal clearance between the back face of each seat ring and its valve body seat. The O-rings also provide a fluid tight seal between the back face of the seat ring and the valve body * * *.

\*   \*   \*   \*   \*   \*

"O-rings 90 which when relaxed are preferably of *circular cross-section* are of a sufficient diameter relative to the depth of grooves 88 to result in their compression between the seat rings 78 and 80 and the valve body recesses in the assembly by an amount greater than the total relative axial displacement between the seat rings and the plug and the body." [Emphasis ours.]

The Patent Office Solicitor admits that, "From the foregoing it is obviously deducible that the groove 88 is approximately ⅞ inch deep." Based on this obviously deducible fact and the statement, which is not disputed, that the cross-sectional diameter of the O-ring when relaxed is one inch, appellant says one skilled in the art would know that the relaxed ring was of less diameter than the radial width of groove 88 and so meets the claim limitation. To demonstrate how this would be known, the following diagram "Figure A" has been submitted, first with an affidavit of Paul A. Manor, Chief Engineer of the company which is assignee of the application at bar, and again in the brief.

Figure A

What the above diagram shows, in brief, is that if the depth of groove 88 is ⅞ inch, the drawings clearly show, and consistently throughout the several figures, that the radial width of groove 88 must be about 1⅛ inch and therefore that a one-inch O-ring would be of less width. The dotted outline 90 shows the

O-ring as it is illustrated in the application drawings and the solid circle 90 shows how it would look when released from tension. We find this argument convincing. We also find that it reasonably supports the opinions expressed in the Manor affidavit that this is what one skilled in this art would be taught by the application.

The principal counter argument of the solicitor is to the effect that appellant has no right to rely on the drawings for the relative width and depth dimensions which they show, for the reason that "patent application drawings are not presumed to be drawn to scale or correct proportion." Only the Olson case, supra, is cited to support this proposition. We find nothing therein, however, which raises a presumption that drawings such as those here are not drawn to scale with reasonable accuracy or that four enlarged detailed figures consistently showing the same relative proportions must be ignored. We think the showing of the drawings can be relied on to the extent they have been by applicant.

The decision of the board is reversed.

Reversed.

MARTIN, J., sat but did not participate because of illness.