**Application of Lawrence A. HEINLE.**
**Patent Appeal No. 7233.**

United States Court of Customs
and Patent Appeals.
April 8, 1965.

Karl A. Limbach, San Francisco, Cal.,
for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–6, all claims in application serial No. 816,848, filed May 29, 1959, entitled "Toilet Paper Core." This application is stated to be a continuation-in-part of application serial No. 271,938, filed February 16, 1952, on which Patent No. 2,889,121 issued June 2, 1959. The main issue is double patenting.

### The Invention

The invention is an improvement in the cylindrical cardboard core on which the commonly-used roll of toilet paper is wound. The fixtures of one common type used to support such rolls are provided with cylindrical spindles having two telescoping parts which expand axially under the influence of a spring so that the spindle ends engage in sockets. In removing such a spindle from the fixture after the paper has been consumed it is necessary to grasp the spindle and move it axially. There is some difficulty in doing this when the spindle is covered by the empty cardboard core. We quote the apt description of the specification:

"* * * the close spacing of the ends of the support spindle * * * with respect to the adjacent side-walls of [the] holder * * * makes difficult, finger insertion therebetween for the purpose of removal of the spindle by effecting the above described axial movement of same. As a consequence nails are broken and fingers are pinched in the process of spindle removal. Further, it is difficult to effect sufficient axial movement of the spindle for its removal from the holder by employing the alternate method of collapsing the core about the spindle, because of the problem of getting sufficient gripping engagement between the core and the typically slick surfaced spindle."

The invention obviates this difficulty and resides in the provision of a pair of opposed elongated slots in the core large enough so that the spindle can be gripped through the slots for removal. Claim 3, which we have broken up into lettered clauses, reads:

"3. A toilet paper core

"[a] adapted for use with a support spindle insertable within the core and requiring axial movement through an operating distance for its removal from spindle end support means,

said core being

"[b] of tubular shape

"[c] having diametrically opposed apertures disposed centrally of the length of the core,

"[d] with the circumferential width of each of said apertures being approximately one-fourth of the circumference of said core

"[e] thereby permitting passage therethrough of fingers for access to and gripping of said support spindle

"[f] and the axial length of said apertures being at least as large as said width plus said operating distance."

Claims 1–5 are all directed to "A toilet paper core" but claim 6, rejected on different grounds, is directed to a combination. It reads as follows:

"6. In combination,

"[A] a support spindle having means for expanding and contracting said spindle axially thereof for an operating distance suffi-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

cient to permit insertion and removal of said spindle between opposed spindle receiving walls and latching of said spindle in said walls and

"[B] a tubular toilet paper core

"[1] mounted on side [said] spindle and

"[2] having in its side wall opposed apertures

"[i] the circumferential width of each of said apertures being approximately one-fourth of the circumference of said core

"[ii] thereby permitting passage therethrough of fingers for access to and gripping of said support spindle

"[iii] and the axial length of said apertures being at least as large as said width plus said operating distance."

The correspondence of [2], [i], [ii], and [iii] to limitations [c], [d], [e], and [f] of claim 3 will be apparent.

### The Rejection

The examiner and the board relied on three references:

| Heinle | 2,889,121 | June 2, 1959 |
| Schwarzkopf | 1,860,058 | May 24, 1932 |
| McConnell | 2,889,122 | June 2, 1959 |

Heinle is appellant's own patent, above referred to, issued on the parent application of the application at bar. The applications were copending and it is not "prior art." It is unnecessary to discuss Schwarzkopf or McConnell as they were cited only to show the admittedly old, conventional, telescoping spindles with which appellant's apertured core is used.

There are two grounds of rejection now relied on as summarily stated in the Patent Office Solicitor's brief: claims 1–6 are rejected on the ground of double patenting in view of the Heinle patent and claims 3 and 6 are additionally rejected as "including subject matter having no clear basis in the application as filed."

### The Double Patenting Rejection

In considering this rejection we will first state more specifically that claims 1–5 were rejected, in the words of the board, "on the ground of double patenting with respect to the single claim of the Heinle patent." Claim 6 was rejected, again in the board's words, "as unpatentable over the Heinle patent claim in view of either Schwarzkopf or McConnell."

As to claims 1–5, we shall deal with them together since no one has pointed to any reason for distinguishing them on the double patenting rejection, or even pointed out the differences between them. As above stated, they are all directed to the core structure per se. The position of the examiner as distilled in his Answer was that "The structure of the core recited in these [appealed] claims is deemed to be clearly disclosed and claimed in the Heinle patent." The board accepted this view and affirmed on it, adding its own further thought, as follows:

" * * * the *combination* claimed in the patent *includes* the core tube details of the instant separately claimed sub-combination, as an essential distinguishing feature of said *combination*. Under these circumstances, different concepts are not involved, *the inventions are not distinct,* and double patenting is present. In re Coleman et al., 38 CCPA 1156; 90 USPQ 100; 189 F. (2d) 976; 1951 CD 475; 650 OG 926.

"Accordingly, the instant rejection of claims 1 through 5 will be sustained." [Emphasis ours.]

As the issue revolves around just what the Heinle patent does claim in its single claim, which the board admitted is to a combination, we set it forth broken down into its elements:

In combination with

"[A] a cylindrical core-mounting spindle having diametrically opposed, axially extending slots therein,

"[B] holding elements pivotally mounted in said slots for swinging movement from positions within said slots to positions in which they protrude from said slots,

"[a] at least one pair of said holding elements being swingable in opposite directions about their respective pivots,

"[C] spring means for urging said holding elements toward the positions in which they protrude from said slots,

"[D] said slots being provided with abutments to limit the amount of protrusion of said holding elements,

"[E] and a core for a roll of paper adapted to be circumposed on the spindle, said core comprising

"[a] a readily frangible tube adapted to be sleeved on the spindle and having

"[i] diametrically opposed slots through its walls for receiving said holding elements with the holding elements of said pair disposed adjacent opposite end walls of the slots for restricting relative axial motion between said spindle and said core,

"[ii] the slots in said core being of such width and length as to permit the free passage of an operator's fingers therethrough to release said holding elements."

Our first point of disagreement is with the examiner's view that the Heinle patent *claims* the core of the appealed claims 1–5. It should be perfectly clear that it claims a *combination* of the five elements denoted as A, B, C, D, and E. The core is but a single element in that combination, namely E, and it makes no difference to the discussion whether we call it an element or a "sub-combination" as the Patent Office has done. We think it is more properly denoted an element, notwithstanding the detailed specifications given for that element in the claim. It is a single thing. The *inclusion* of an element in a claim to a combination does not make the claim a claim *to* the element, nor is the element "claimed" therein. What is claimed is the totality of what is set forth and what is set forth here very distinctly is a *combination* of five specific elements, each described in more or less detail. The examiner erred in holding that the core of element E is "claimed in the Heinle patent." [1]

The examiner said that the core element is "clearly disclosed" in the Heinle patent, as of course it is, otherwise the present application would not be a continuation-in-part thereof, but we do not see what bearing that fact has on the issue before us.

Our second point of disagreement is with the board's application of In re Coleman et al., 189 F.2d 976, 38 CCPA 1156, in which this court *reversed* a double patenting rejection. The board has quoted but a few words from a long paragraph which is a general discussion of the law, the whole of which contains more support for appellant than it does for the rejection. Among other things, the paragraph says:

"It is settled law that a party might be entitled to a patent for a combination *because of the coopera-*

---

**1.** We have considered the word "with" in the opening clause. In our opinion the meaning that must be given to it is, "in combination *with* A, elements B, C, D, and E." With that type of opening it *might* be that the claim would go on to describe details of an element A and then state the combination to be one of A *with* E. That is not the case here. Note the word "and" as preceding element E, grammatically the last element of the five enumerated. If it had been intended to claim a two-element combination of the novel element E with an old spindle, clause E would appropriately have been introduced by the word "of." Alternatively, the style of claim 6 at bar would have been used, omitting the word "with" and joining the two elements with the conjunctive "and." We have studied the patent specification and while it is in some ways pointed toward the core being the primary invention that is certainly not what is claimed.

*tion of the elements contained therein,* and at the same time be entitled to a separate patent for one of the elements of the combination; * * * where the element does not constitute the sole distinguishing novelty in the combination the inventions are distinct and double patenting will not be found." [Original emphasis.]

Even were we to accept the board's view of the law, for which it cited Coleman, we would still not agree with its conclusion for the further reason that we do not agree that the apertured tubular core "sub-combination," as it calls it, is the "essential distinguishing feature" of the combination of the sole claim of the Heinle patent. A mere look at the claim refutes the idea. What the patent describes and claims as the invention involves a special wooden spindle (not of the endwise telescoping type but of the kind having end pins to drop in slots in a wall bracket), containing recesses in which spring-actuated holding elements are mounted to project outwardly and engage the ends of apertures in the tubular core of the toilet paper roll *to prevent it from shifting axially* on the spindle. All of this mechanism is elaborately set forth in the claim as a novel combination.

Appellant has now brought before us an application which describes the *same* apertured core described in the patent, to be sure, together with added description of *different* commonplace spindles of the endwise telescoping variety, and is urging the patentability of claims to this *element* (claims 1–5) as a patentable invention on its own account and of a claim (6) to the combination of this novel element (novelty not being questioned) with an old element, namely the *telescoping* spindle, which is not even shown in the patent.

■ We do not find the grounds of rejection as stated by the examiner and the board under the head of double patenting to be supportable in fact or in law. Without considering several other matters in the record and briefs, we feel constrained to reverse the double patenting rejection

for the above reasons. We do take note, however, of certain points worthy of mention.

■■ The examiner indicated in his Answer that he was troubled by the thought "that after the expiration of the Heinle patent to the combination of the spindle and core, the public should be entitled to make and use the core set forth in the claim of the patent. The granting of a second patent claiming the same structure of the core but merely describing it as for a different use appears to improperly extend the monopoly of the first patent." We think we sufficiently answered this type of argument, which we consider legally unsound, in our recent opinion in In re Sarett, 327 F.2d 1005, 51 CCPA 1180, particularly in the 7th, 8th, and 9th paragraphs following the heading "The Relationship between Appellant's and the Patentees' Inventions." The issuance of a patent is no guarantee or even a representation that everything disclosed in it is immediately free of patent or other restraints legally created under the law. Should there be such other patents still in force when a patent expires, the monopoly of the expiring patent is not "extended"; that monopoly ends and any other patents which may affect the rights of the public to use something the expiring patent discloses stand on their own legal foundations. The expiration of a patent right is not a guarantee of a right to use. The right to make, use or vend any given thing may be, and often is, subservient to several patents expiring at different times. Cf. In re Mogen David Wine Corp., 328 F.2d 925, 51 CCPA 1260.

Claim 6 deserves a word in addition to claims 1–5. We find the latter claims directed to the core per se to have been improperly rejected for double patenting because the Patent Office was wrong in contending they are directed to the essential distinguishing feature of the combination claimed in the patent if, indeed, it does not contend that the patent actually claims the core, which we have held it does not do.

■ Claim 6, supra, is drawn to a combination of the novel core and an old telescoping spindle. As to it the solicitor's brief says, erroneously, "claim 6 recites specifically the same combination as that of the patent, since the claim [6] does not exclude the holding elements." This is a non sequitur. Inspection of claim 6 will show that it is drawn to a different combination from the claim of the patent. Specifically, in claim 6 element A is an axially telescoping or expanding spindle; in the patent claim, supra, the spindle structure is made of the subcombination of elements A, B, C, and D, a very different mechanism. The fact that claim 6 on appeal does not *exclude* holding elements is of no relevancy. The fact is it is drawn to the combination of a specific type of spindle, which is old, different from that claimed in the patent, and the specific core element, which is new. The functional relationships of the elements of the two combinations are different. We feel that claim 6 is a proper alternative way of claiming appellant's invention. The functional advantage of the core of claims 1–5 when it is used with the conventional telescoping spindle is that it simplifies the removability of the old telescoping spindle and this appears to be a new functional relationship justifying a claim to this combination of the new with the old element as a new combination. It has not been contended that the combination lacks novelty, or would have been obvious, and it certainly possesses more than enough utility to satisfy the law.

### The Disclaimers

Appellant, following the board's initial decision affirming the rejection, filed a request for reconsideration and at the same time filed (1) a terminal disclaimer in the application at bar, reducing the term of any patent granted thereon to that of the issued Heinle patent, and (2) a disclaimer of the sole claim of the patent. Appellant's purpose was to dispose conclusively of the arguments that (1) allowance of the appealed claims would result in extension of the monopoly of the patent beyond its expiration date and (2) that it would be obtaining two patents on one invention.

The board, citing In re Siu, 222 F.2d 267, 42 CCPA 864, and other cases, refused to give any effect to the disclaimers, commenting,

"* * * the pertinent statutes do not 'warrant the allowance of more than one patent for a single invention independently of the question of extension of monopoly' We deem it immaterial that in these cases there may have been only a terminal disclaimer involved and not as here a disclaimer of the prior patent in addition, since the basic doctrine enounced therein is not affected by the latter disclaimer."

■ We find the board's position somewhat difficult to understand. It apparently proceeded wholly on its theory that there is only one invention here. We have already stated why we disagree with that. In In re Dubois, 262 F.2d 88, 46 CCPA 744, also cited by the board, where we found two inventions to exist, as we do here, we held that a terminal disclaimer "effectively removed from the case any issue of extension of the monopoly * * *." We find the terminal disclaimer here to have a similar effect. In In re Robeson, 331 F.2d 610, 51 CCPA 1271, we held that a terminal disclaimer overcame the extension of monopoly objection to issuing a patent on "an obvious variation" of an invention claimed in an issued patent to the applicant and reversed the "double patenting" rejection. We followed that holding in In re Kaye, 332 F.2d 816, 51 CCPA 1465, and again reversed a double patenting rejection. (We note that these holdings as well as In re Sarett, supra, have all been subsequent to the board's second opinion herein.)

■ As to the objection that there would be two patents for the same invention, this court held in In re Hession, 296 F.2d 930, 49 CCPA 809 (and the dissenters there were in agreement with the proposition) that a disclaimer of all claims of a patent was effective in remov-

ing such an objection. We think it is so effective here.

It should be clear that we do not find it necessary to rely on the disclaimers, or either of them, to reverse in this case. We nevertheless hold the disclaimers to be effective in removing two of the frequently cited reasons given in support of double patenting rejections, extension of monopoly in point of time and prevention of the issuance of two patents on one invention. With the disclaimers of record, we can find no possible support for the double patenting rejections in this case.

### Claims 3 and 6

There remains the rejection of these claims because they contain a limitation said to be without support in the disclosure. The limitation is that the width of the apertures in the core is "approximately one-fourth of the circumference of said core." ([d] in claim 3 and [2] [i] in claim 6.) The examiner termed this a "mathematical dimension" and, finding no specific mention of it in the *words* of the specification, rejected appellant's argument that the width dimension of these claims is shown in the drawings and ruled that

" * * * a patent drawing does not define the precise proportions of the elements depicted and thus may not be relied on to show particular distances or sizes when the specification is completely silent in that respect. See In re Olson, 212 F.2d 590; 101 U.S.P.Q. 401 [41 CCPA 871]."

The board fully accepted this rejection and reasoning and added, in its second opinion, that

" * * * while Figure 2 might be said to depict a slot width of substantially the circumferential proportion involved [,] Figures 1 and 4 clearly do not."

■ First, we note the inexact nature of the limitation, "approximately one-fourth of the circumference" and its function in merely having opposed apertures of sufficient size to permit the fingers and thumb to grasp the spindle through them. In the Olson case this court (one judge dissenting) affirmed a refusal to permit reliance on patent drawings of a hydraulic hose coupling containing ball valves in support of claim limitations relating to dimensions "of the order of a few thousandths of an inch." We think the facts there clearly distinguish the *holding* of that case from the situation at bar. In the opinion in Olson the court said:

"The board correctly held, however, that it is proper in support of claims which otherwise could not be allowed, to amend the specification of a pending application to include new matter clearly and conclusively disclosed by the drawings. Bloodhart v. Levernier, 64 F.2d 367, 20 C.C.P.A., Patents, 917; [17 U.S.Pat.Q. 188;] Wiemer v. Coe, Comr.Pats., 45 USPQ 407."

This is the familiar rule that the drawings and the specification may be amended to conform to each other and that the added matter will not be deemed technical "new matter" within the prohibition of the law. 35 U.S.C. § 132, Rule 118. See also our further discussion of the Olson case in In re Wolfensperger, 302 F.2d 950, 49 CCPA 1075.

■ Our inspection of the application drawings leads us to agree with the board that Fig. 2 depicts a pair of slots with the claimed width dimensions and to disagree that Figs. 1 and 4 fail to show that same dimension. The latter figures are perspective views and it seems to us that they conform to the one-fourth circumference limitation almost exactly. But the claim requires only an approximation. Since we believe an amendment to the specification to state that one-fourth of the circumference is the aperture width would not violate the rule against "new matter," we feel that supporting disclosure exists. This rejection was therefore in error.

The decision of the board is reversed. Reversed.

**1008**

ALMOND, Judge, with whom MARTIN, Judge, join (concurring).

I would reverse the double patenting rejection because of the terminal disclaimer filed by appellant. In re Robeson, 331 F.2d 610, 51 CCPA 1271. I cannot agree with the majority that it is unnecessary to rely upon the disclaimers in order to reverse the board. The core claimed in the application before us is obvious in view of the core which is an element of the patent claims. Thus, allowance of the present application without a terminal disclaimer would result in an unlawful extension of the monopoly. See my dissenting opinion in In re Allen, 343 F.2d 482, 52 CCPA ——.